# CHARLESTON.

## Ensign Co. *v.* Carroll.

Submitted November 12, 1887.—Decided November 26, 1887.

1. JUDGMENT—EFFECT—CONCLUSIVENESS.

     M. recovered against C. a judgment for $41.00 with interest and costs, which for value received he assigned to E., who afterwards became indebted to C. $48.90, who, to recover the same, sued E. before a justice. E. pleaded to C.'s demand said judgment as a set-off. To this plea C. replied that E. had procured said assignment with the fraudulent intent of depriving him of his legal right to exempt $200.00 of personalty, which right he said he had claimed against M. Upon the trial of the issue on this replication, C. demanded a jury, who found in his favor a verdict for the whole of his demand. On motion of E., this verdict was set aside, and a new trial granted. Upon this new trial, C. again demanded a jury,

who found a verdict in favor of E. for $5.79, for which he had judgment, with costs. C. afterwards presented his bill of complaint to the judge of the Circuit Court setting up the foregoing facts, but alleging no other grounds for equitable relief; praying that E. might be perpetually enjoined from collecting his judgment of $5.79, and from using said assigned judgment as a set-off against his demand of $48.90, and that he may be compelled to pay his demand of $48.90, and for general relief. E. answered the bill, and pleaded the trial and judgment as *res adjudicata;* but, upon final hearing, said judge perpetually enjoined E. from collecting his judgment of $5.79, and decreed that he pay C. the whole amount of his demand, with the costs of his injunction, and also all costs incurred by him in prosecuting his unsuccessful civil suit before the justice. Upon a petition filed by E. alleging the foregoing facts, and praying that a writ of prohibition might issue against C. and the judge, prohibiting them from proceeding in said chancery cause, it was *held*, that the judgment for $5.79 rendered in favor of E. by the justice upon a verdict of the jury, on said new trial, was final and irreversible, and was conclusive between the parties thereto as to all matters involved in that controversy.

2. Trial—Verdict—Conclusiveness.

That the facts involved in the issue having been tried by a jury, can not be otherwise re-examined than according to the rules of the common law. (p. 540.)

3. Judgment—Effect—Conclusiveness.

That a second new trial of the cause, as well as an appeal from said judgment, being expressly prohibited by law, no new trial thereof can be had in a court of equity. (p. 543.)

4. Prohibition, Writ of—To Prevent Enforcement of Decree.

That it is proper, in such case, that a prohibition should be awarded against C. and the judge, prohibiting them from all further proceeding to enforce the said decree. (p. 546.)

5. Prohibition, Writ of—To Prevent Enforcement of Decree.

And, that inasmuch as it is apparent upon the face of the record that, under the circumstances of this case, the Circuit Court had no jurisdiction to grant the relief prayed for in said bill of injunction, the prohibition may be awarded as well after, as before the rendition of said decree. (pp. 545-7.)

Statement of the case by Woods, Judge :

On a former day of this term the petitioner, the Ensign Manufacturing Company, a corporation created and existing under the laws of this State, filed its petition in this Court,

verified by affidavit, substantially setting forth the following facts: That on the twenty first July, 1882, one Mather recovered before a justice a judgment against James W. Carroll for $41.00, with interest from that date, and $2.50 costs, which on the tenth of July, 1886, for value received, he assigned to the petitioner, which, during the months of August and September of 1886, became indebted to Carroll for work and labor in the sum of $48.90. To recover this sum Carroll brought suit against petitioner before a justice, filing his complaint setting forth the items of his demand; to which petitioner pleaded said judgment as a set-off, and also that Carroll's demand was not yet due and payable. To this plea of set-off Carroll filed the following replication: "The plaintiff comes and says that the judgment mentioned in the defendant's plea, and by it claimed as a set-off to the plaintiff's claim, was assigned by one V. W. Mather, the judgment creditor, to the defendant, with the intent to defraud the plaintiff of his constitutional right to an exemption of personalty of not exceeding $200.00, which exemption he (the said plaintiff) had claimed against the said judgment creditor; that the said defendant had full notice of said fraudulent intent aforesaid and procured said assignment with the fraudulent intent of defeating the plaintiff in his exemption of personalty as aforesaid, and that as to said judgment the plaintiff claims his exemption of personalty as allowed by law." That the issue joined upon these pleadings, at the request of Carroll, was tried by a jury, who found a verdict in his favor for the whole of his demand; which was set aside, and a new trial ordered, which, at the request of Carroll was also had by a jury on the twenty second October, 1886, and resulted in a verdict and judgment in favor of petitioner for $5.79, with interest and costs. That when the pleadings were made up, and during both trials, Carroll was present in person and by counsel, and petitioner by counsel, and that Carroll objected to the filing of petitioner's plea of set-off, and at the trial to the introduction of any evidence in support thereof; both of which objections were overruled by the justice, and the plea was filed, and a transcript of the judgment, as well as the assignment thereof, were introduced in evidence to the jury; and that the verdict of $5.79 in favor of petitioner

was the excess of the amount of the Mather judgment above the demand of Carroll. It further sets forth that on the fourth day of November, 1886, said Carroll presented to the Hon. Ira J. McGinnis, judge of the Circuit Court of Cabell county, his bill of complaint against petitioner, alleging the foregoing facts, and that he was a husband and parent residing in this State, and, as such, entitled to an exemption of personal property to the extent of $200.00, and that all his personal estate did not amount to that sum, and the pretended assignment was a mere arrangement to collect the judgment for Mather, and, if that failed, the judgment was to be retransferred to Mather; and prayed that petitioner might be enjoined from in any manner enforcing its judgment of $5.79; that said verdict be set aside, and a new trial be granted him; and that petitioner be enjoined from pleading said assigned judgment as a set-off to his demand; or, if that could not be done, that he have a decree for the full amount of his demand; and that the assignment of said Mather's judgment, so far as the same interfered with his right of exemption, might be treated as null and void, and for general relief.

A preliminary injunction was allowed as prayed for, and petitioner answered the bill, to which a general replication was filed, and depositions were taken and filed on both sides, which were read at the hearing. The answer admitted the recovery and assignment of the Mather judgment, but avers that it was in good faith, and without fraudulent intent, assigned to it in part satisfaction of a debt of $100.00 due to it from Mather. It admitted all the allegations of the bill in regard to suit brought against it by Carroll to recover his wages, and in regard to the trials, verdicts, and judgment rendered thereon; it denies that any agreement or contract ever existed between it and Mather in regard to said assignment other than what appears upon the face thereof, or that it was privy to or participating in any fraudulent purpose of Mather to deprive him of his right of exemption. Petitioner's answer further set up and relied upon the said proceedings had upon said claim before the justice as *res adjudicata*, and that, Carroll having elected to go to law to adjudicate his cause upon all the questions presented by the pleadings,

he is thereby estopped from proceeding to adjudicate the same facts again.

Upon final hearing it was decreed that the petitioner from collecting his said judgment of $5.79 be perpetually enjoined, and that it pay to said Carroll $50.61, the amount of his said wages, including interest to first October, 1886, with interest, and his costs incurred in prosecuting said injunction, and also his costs expended before said justice in his unsuccessful civil action to recover said wages, which had never been referred to or claimed in said bill, but saved to the petitioner the right to sue out execution, or any other process on the Mather judgment against Carroll to enforce the same against his property, over and above his exemption of $200.00 worth of personalty. The petitioner further alleged that Carroll had sued out execution upon said decree against its goods and chattels for said $50.61, with interest and costs ; and thereupon prayed that a writ of prohibition might be awarded prohibiting said Ira J. McGinnis, judge, from proceeding further in said chancery cause. A rule was awarded against Hon. Ira J. McGinnis, judge of the Circuit Court of Cabell county, and said James Carroll, requiring them to appear before this Court on the twelfth day of November, 1887, to show cause, if any they could, why the writ of prohibition prayed for should not issue.

To this rule Judge McGinnis made return that the Circuit Court, in making the decrees and orders in said cause, was clothed with and acted within its equitable jurisdiction in the premises, and that said decree in said cause so made by the Circuit Court was made with full jurisdiction and authority in chancery, and the same is equitable and right, and asks that the rule may be discharged. Carroll also made return to the rule, in substance as follows : That neither he nor Judge McGinnis was proceeding to enforce said decree of the fifth of May, 1887; that on the thirteenth July, 1887, he sued out a *fieri facias* thereon, directed to the sheriff of Cabell county, against the goods and chattels of the petitioner, for $50.61, with interest from fifth May, 1887, and $42.00 costs, which on the fifteenth July, 1887, was levied on the property of petitioner, which, with H. C. Simms as its surety, executed a forthcoming bond for its delivery on

the day of sale; that the said property was not delivered, and the bond was forfeited, and such fact was indorsed on the bond by the sheriff, who returned the same to the clerk's office of the court whence it issued, on the sixth of September, 1887, and the clerk indorsed thereon the date of its return, which bond thenceforth had the force and effect of a judgment against the obligors therein, which bond still remains in full force, and has the effect to suspend all proceedings on said decree, and is in some sense a satisfaction thereof, and therefore he says he is not proceeding to enforce said decree as suggested. He further returned that the Circuit Court, on the chancery side thereof, has jurisdiction over judgments at law to set them aside and grant new trials on the ground of fraud, accident, surprise, or some adventitious circumstances beyond the control of the party seeking relief, and that whether the averments of respondent in his chancery cause were sufficient to call into exercise this jurisdiction for the relief he prayed for was a question to be decided by the Circuit Court, and the same could only be reviewed upon appeal, and not by prohibition, and thereupon asked that the rule be discharged.

To these returns the petitioner demurred, and also filed a reply to so much of said return of Carroll as denies that he is proceeding to enforce the decree of the fifth of May, 1887, and says that said Carroll on the twenty third September, 1887, instituted in the Circuit Court of Cabell county, against petitioner and its surety, a chancery cause on said forthcoming bond to enforce the lien thereof against petitioner's real estate; and that said forthcoming bond, and all proceedings had thereon, including said last-named chancery suit, are only the means of enforcing the decree of the fifth of May, 1887, and are therefore void; and prays that said Carroll and the said judge may be prohibited from all further proceedings in the last-named suit, as well as on said decree of the fifth May, 1887. To this reply the defendants demurred, and there were joinders in both demurrers.

*Simms & Enslow* for petitioner.

*C. W. Campbell* for respondents.

Woods, Judge :

It is a well-settled rule in practice that, when any pleading is demurred to, the demurrer goes back to the first error, and judgment will be rendered thereon against the party committing the first fault, although the pleading demurred to may be fatally defective. In this case the parties have demurred to the respective pleadings of each other, and as a consequence thereof they admit that the allegations made in their respective pleadings are true as stated therein. It therefore appears that before and at the time when petitioner became indebted to Carroll in the sum of $48.90, on account of wages earned by him in the months of August and September, he was indebted to the petitioner, as the assignee of Mather, in the sum of $41.00, with interest from the twenty first of July, 1882, and $2.50 costs, and that, when he brought his suit before the justice to recover the amount of his wages, the petitioner made defence thereto by filing his plea of set-off, as the assignee of this judgment; that issue was joined on this plea; that Carroll demanded that the same should be and it accordingly was tried by a jury, who found a verdict in his favor for the whole of his demand, which the justice for some good cause set aside, and granted the petitioner a new trial, which, by the demand of Carroll, was also tried by a jury, who found a verdict in favor of petitioner for $5.79, being the excess of principal, interest and cost of the Mather judgment over the amount of Carroll's demand, for which petitioner had judgment; and this was exactly in accordance with sections 4 and 9, ch. 126, Code, unless he was not entitled to such set-off by reason of matters alleged in his replication to the petitioner's plea of set-off.

Treating this replication of C. as sufficiently setting out all the grounds of defence which might be necessary to show that E. had no right to use the judgment of Mather as a set-off against the demand claimed in his civil action, he had the right to prove, on the trials thereof before the jury, that E. was not in fact the owner of that judgment; that E. was simply the agent of Mather, used or employed for its collection; that the pretended assignment of the judgment was made to enable E. the better to collect it, and that the judgment was in fact the property of Mather. He also had the

right to prove that he was a husband or parent residing in this State; that an execution had been issued upon said judgment, and placed in the hands of the proper officer, who had levied, or attempted to levy the same upon his personal property, or some part thereof; that he had delivered to such officer the list "of exemption of his personal property prescribed by section 24, ch. 41, Code, and that his claim of $48.90 against the petitioner was included in that list; that the property included therein did not exceed in value $200, and that the pretended assignment of the Mather judgment was in fact made and intended to enable Mather to evade the force and effect of the statute in that case made and provided, and to deprive Carroll of the benefit of his exemption to the extent of his demand of $48.90 due to him for his wages. All these questions were matters of fact for the consideration of the jury, and the burden of proving them rested upon Carroll. If he had proved that the Mather judgment did not in fact belong to the petitioner, or that he had made and delivered such list of exemption to the officer holding such execution, and that his claim for $48.90 was included therein, the jury would have been fully warranted in denying the set-off, and finding in his favor on the new trial the same verdict found for him on the first trial, and we can not presume the jury would not have done so. The jury heard and considered all the evidence offered by Carroll to establish these facts, and, having found a verdict in favor of petitioner, we must conclude they were not proved, and therefore, in contemplation of law, were not true.

These circumstances bring this case precisely within the rulings of this Court in *Barlow* v. *Daniels*, 25 W. Va. 512, and in *Hickman* v. *Railroad Co.*, *supra*, 296, and *Fouse* v. *Vandervort*, *supra*, 327. All the facts in this case had been twice tried by a jury, and by section 91, ch. 50, Code, it is expressly declared that "no more than one new trial shall be granted by a justice in any case." And this Court in *Barlow* v. *Daniels*, and *Hickman* v. *Railroad Co.*, and *Fouse* v. *Vandervort*, *supra*, has decided that "the provision of section 13 of article III of the Constitution of this State, as amended in 1880, which declares that

'no fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law,' applies to cases tried by a jury of six before a justice, and prohibits the re-trial of such cases by the Circuit Court under the provision of chapter 8, Acts 1881." As the justice in this case had no authority to re-open this controversy, and as there can be no appeal from his judgment rendered upon the verdict of the jury, and as the facts so tried by the jury can not be otherwise examined in any case than according to the rules of the common law, it necessarily follows that the judgment of the justice is final and irreversible, and is conclusive upon the rights of the parties to the controversy on all questions involved in the decision thereof. 1 Kent. Comm. 316. It is clearly within the power of the Legislature, unless restricted by the Constitution, to prescribe the limits to which litigation in regard to any particular matter may be carried, and when that limit is reached it must be the end of the controversy.

In regard to civil suits before a justice, the inhibition contained in section 13 of article 3 of the Constitution, as construed by this Court in *Barlow* v. *Daniels, Hickman* v. *Railroad Co., and Fouse* v. *Vandervort, supra,* and the provision contained in section 91 of chapter 50 of the Code declaring that " no more than one new trial shall be granted by a justice in any case," necessarily precludes any other court from re-trying the matter determined in the trial before the justice; nor will a party to any such ended controversy be permitted by any change in the form of his remedy, or of the character of the forum to which he resorts, to re-try the cause, or review the conclusions of law or fact so settled and determined. *Meeks* v. *Windon,* 10 W. Va. 180. If a court of equity can in such a case assume and rightfully exercise jurisdiction to review, re-try, and reverse such a judgment upon the same matters of law and fact therein decided, then said constitutional and statutory prohibitions, as well as the construction placed thereon by the court, would become nugatory, and the parties to such suit would in all cases where the matter in controversy, exclusive of costs, was not of greater value or amount than $100.00, be without remedy. If this unlimited jurisdiction be con-

ceded to a court of equity, then will the proposition claimed in defendant Carroll's return to the rule be true,— that the court of equity being required to determine whether, upon a given state of facts, it has jurisdiction to grant the relief prayed for, if it determines that it has such jurisdiction, such conclusion, and all facts done in the exercise of such jurisdiction, can only be reviewed by appeal, and not by way of prohibition. Following such a proposition of law to its logical results, a court of equity might claim and exercise criminal as well as civil jurisdiction, for upon every indictment or criminal accusation brought before it, the court would be required to determine upon the facts therein stated whether it had jurisdiction in the particular case or not. And as this is equally true of every other court, in every case brought before it for trial, it would thus be able to usurp the jurisdiction of every other court.

But it is contended by the defendant, Carroll, that the Circuit Court of Cabell county, as a court of equity, has jurisdiction and power over judgments at law to set them aside, and grant new trials, for equitable causes, on the grounds of fraud, accident, surprise, or some adventitious circumstances beyond the control of the party seeking relief, and therefore said court had power to grant the relief prayed for. Except in the case in judgment, we know of no case where a court of equity has attempted, in the exercise of its lawful jurisdiction, to set aside a judgment at law, and grant the party a new trial. It may be stated as a general principle, in regard to injunctions after a judgment at law, that any facts which prove it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself in a court of law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or agents, will authorize a court of equity to interfere by injunction to restrain the adverse party from availing himself of such judgment. "Bills of this sort are usually called bills for a new trial." 2 Story Eq. Jur., § 887. Neither will courts of equity relieve against a judgment at law where the case in equity proceeds upon a defence equally available at law, but the plaintiff must es-

tablish some special grounds for relief. And this doctrine goes still further, for it is the general rule that a defence can not be set up as a ground of a bill in equity for an injunction which has been fully and fairly tried at law, although it may be the opinion of a court of equity that the defence ought to have been sustained at law; and, if there be any exceptions to this rule, they must be of a very special nature, and this doctrine applies to all cases where the matter of the controversy has been already decided by any other court of competent jurisdiction, even though it be a foreign court, or where it might have been made available in that court as a matter of claim or defence in a suit pending in such court.

Speaking of this doctrine, Lord Redesdale says : " It is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere; because, if a matter has been already investigated in a court of justice according to the common and ordinary rules of investigation, a court of equity can not take upon itself to enter into it again. There may be cases cognizable at law, and also in equity, of which cognizance can not be effectually taken at law, and therefore equity does sometimes interfere, as in cases of complicated accounts, where the party has not made defence because it was impossible for him to do it effectually at law. So, where a verdict has been obtained by fraud, or where a party has possessed himself improperly of something by means of which he has an unconscionable advantage at law, which equity will either put out of the way, or restrain him from using; but, without circumstances of that kind, I do not know that equity ever does interfere to grant a trial of a matter which has already been discussed in a court of law, and over which a court of law has had full jurisdiction. " " A bill for a new trial is watched by equity with extreme jealousy. It must see that injustice has been done, not merely through the inattention of the parties, but some such reason as I have mentioned must exist. " In *Slack* v. *Wood*, 9 Grat. 40, Lee, J., says: " The grounds on which a court of equity will interfere to grant relief against a judgment are confessedly somewhat narrow and restricted. It

is not sufficient to show that injustice has been done, but it must appear, also, that it was not occasioned by the inattention of the party complaining." In *Allen* v. *Hamilton*, 9 Grat. 257, Allen, J., said: "The rule. is established that a party having a good legal defence shall not, after judgment at law, come into a court of equity upon the legal matter without alleging and proving good excuse for not using it at law; and moreover a court of equity will not grant relief merely because injustice has been done." And the same doctrine has been announced by this Court in *Alford* v. *Moore*, 15 W. Va. 597, where it is declared that " a party will not be entertained in a court of equity on a bill seeking relief from a judgment at law, which has been rendered against him in consequence of his default, upon grounds which might have been successfully taken in a court of law, unless some reason founded in fraud, accident, surprise, or some adventitious circumstances beyond the control of the party be shown why the defence was not made in that court. " *Shields* v. *McClung*, 6 W. Va. 79; *Black* v. *Smith*, 13 W. Va. 780; *Ferrell* v. *Allen*, 5 W. Va. 43; *Meem* v. *Rucker*, 10 Grat. 509; *Brown* v. *County of Buena Vista*, 95 U. S. 157; *Sample* v. *Barnes*, 14 How. 70. These authorities sufficiently show the grounds upon which courts of equity interfere. by injunction to prevent the execution of a judgment against the party complaining.

In the case under consideration, Carroll's demand was a legal demand, pursued before the justice who had full jurisdiction to hear and determine the suit instituted to recover the same. The petitioner's defence was a legal defence, expressly authorized by section 4, ch. 126, Code, to be made. The special replication thereto set up a sufficient legal defence to this set-off; both parties present by counsel, and Carroll in person. All the evidence offered by both parties was heard and considered by the jury, who, after hearing the argument of counsel on the new trial, found for the defendant $5.79, for which he had judgment. No other new trial could be had,—that was forbidden by section 91, ch. 50, Code; and no appeal from the judgment could be taken; for that was denied by section 13 of article III of the Constitution, as well as by the adjudication of this Court. Such

judgment is final- and conclusive, and in the absence of fraud, accident, surprise, or some adventitious circumstance over which Carroll had no control, which prevented him from making defence against said set-off, can never be questioned in a court of equity. And yet with all these facts appearing on the face of the bill, and in the absence of every equitable ground of relief against said judgment, the Circuit Court not only assumed jurisdiction of this controversy, disregarding all that had been done, and the constitutional and statutory provisions, which forbade any further trial of the case, re-tried the cause upon the same allegations, and not only perpetually enjoined petitioner from collecting his judgment of $5.79 and costs recovered against Carroll, but decreed that it pay Carroll the whole amount of his demand for said wages, and the costs of his injunction, and also the costs incurred by him in the unsuccessful attempt to prosecute his civil action against the petitioner, to which he had never made any claim whatever. From this decree, as long as the same remains in force, the petitioner can have no redress, because the matter in controversy, exclusive of costs, does not exceed $100.00 in value.

It would be a reproach to the law of the land, if such a decree made by a court without jurisdiction in the premises, in violation of the Constitution and statutes of the State, and in disregard of every well settled rule of equity jurisprudence governing courts of equity in relation to injunction to judgments of courts of competent jurisdiction, could neither be reversed nor set aside. Fortunately for the administration of public justice, such is not the fact; for the ancient writ of prohibition remains not only to prevent inferior courts from encroaching upon the jurisdiction of superior courts, but to prevent any inferior tribunal from usurping a jurisdiction with which it is not legally vested, and it is used to keep such courts within the limits and bounds prescribed for them by law; for it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined strictly to the exercise of those powers with which it has been by law intrusted. High Extr. Rem., § 762; *Brazie* v. *Commissioners*, 25 W. Va. 213. Being an extraordinary remedy,

however, the writ of prohibition issues only in cases of extreme necessity, and, before it can bè granted, it must appear that the party aggrieved has applied in vain for redress; and it is never allowed except in cases of usurpation or abuse of power, and not then unless other existing remedies are inadequate to afford relief or no other remedy exists; for it is a principle of universal application, and one which lies at the very foundation of the law of prohibition, that the jurisdiction is strictly confined to cases where no other remedy exists, and it is always a sufficient reason for withholding it that the party aggrieved has another complete remedy at law. High Extr. Rem., §§ 765, 767; *Supervisors of Bedford* v. *Wingfield*, 27 Gratt. 333.

While there is some apparent conflict of authority as to the stage of the cause in the court below, at which the application for the writ may be made, as to whether it should be made before or after the decision of the court, the distinction is as to whether the want of jurisdiction in the subordinate court, which is relied on as the foundation of the writ, is apparent upon the proceedings sought to be prohibited; and where this want of jurisdiction is thus apparent upon the record, the superior tribunal may interpose the aid of a prohibition at any stage of the proceedings below, even after verdict, sentence, or judgment. High Extr. Rem. 774. In *Hutson* v. *Lowry*, 2 Va. Cas. 42, H. owed L. $80.00, for which he executed to him four single bills of $20.00 each, dated the same day, and payable, respectively, in one day, one, two, and three months thereafter. After the last note became payable, L. on the same day brought four several suits against H. upon said single bills for $20.00 each, and recovered against him four several judgments, and on the same day sued out an execution on each of said judgments, and placed the same in the hands of the constable to be levied, who collected the amounts thereof, and returned the executions satisfied "and money ready to render." The defendant notified the constable not to pay over the money to the plaintiff in the executions, and upon these facts applied to the superior court for a writ of prohibition to prevent the justice from all further proceed-

69

ings in the cases because he had no jurisdiction, as all the notes constituted but one debt. The questions arising in the case were adjourned to the general court, which decided that although the judgments had been actually rendered, the execution levied, and the money collected and in the hands of the constable, the prohibition will still go, the defendant having given notice to the constable not to pay the money to the plaintiff. 8 Bac. Abr. 224. In *Jackson* v. *Maxwell*, 5 Rand. (Va.) 636, J. sued M. before a justice, who rendered judgment against M. for $10.00, from which he appealed to the County Court, where the appeal was dismissed as improvidently granted. Thereupon he filed his petition in the County Court, and upon the facts therein stated obtained from that court a writ of prohibition prohibiting the justice from enforcing said judgments. J· then filed his petition in the superior court, prayed a writ of prohibition to the proceedings of the County Court, and the superior court adjourned to the general court the questions arising in the case, which court decided that the County Court had not jurisdiction by prohibition in any case; that, when a County Court shall exceed its jurisdiction by issuing such writ, the superior court of law may and ought, upon proper application, to award a writ of prohibition to such County Court, prohibiting it from further exercise of such jurisdiction or the enforcing any order or judgment made under color thereof. In *French* v. *Noel*, 22 Gratt. 454, it was held by the Court of Appeals of Virginia " that after the judgment of the Circuit Court has been rendered, as well as before, the person injured by the judgment may apply to the Court of Appeals for a writ of prohibition to restrain the appellant and the judge from proceeding to enforce the judgment." And this Court in *Hein* v. *Smith*, 13 W. Va. 358, announced the same doctrine.

It only remains to apply these authorities to these admitted facts. The judgment recovered by the petitioner on the new trial was final and conclusive, and could neither be re-tried nor appealed from; and neither Carroll nor the Circuit Court of Cabell county, as a court of equity, could evade the constitutional or statutory inhibition from proceeding to re-try the cause; and the want of jurisdiction

to do so was apparent upon the face of the bill of injunction, as well as upon the pleadings and proofs in that case, all of which are made parts of the defendant's returns. The petitioner had tried in vain to obtain redress by pleading the former trial and judgment in its defence to the injunction, and no other remedy but the writ of prohibition remained which was adequate to afford relief. We are therefore of opinion that the returns made by the defendants to the rule heretofore awarded against them are not sufficient in law to bar the petitioner of the remedy by prohibition, and that it is entitled to the writ of prohibition prayed for, as well to the erroneous decree of the fifth of May, 1887, as to the execution issued thereon, and to the forthcoming bond executed by the petitioner and its said surety, H. C. Simms, for the delivery of the property therein mentioned, and to all further proceedings to enforce payment thereof. It is therefore adjudged and ordered that a writ of prohibition be awarded according to the prayer of said petition, directed to the defendants, commanding them to proceed no further upon said decree rendered by the Circuit Court of Cabell county on the fifth of May, 1887, nor upon the *fieri facias* issued thereon, nor upon the forthcoming bond dated the seventeenth day of August, 1887, executed by the petitioner and its surety, H. C. Simms, for $———, conditioned for the delivery of the property therein mentioned, nor any proceedings to enforce payment thereof; so that the said judgment of the said justice rendered on the twenty second day of October, 1886, in favor of the petitioner against said James W. Carroll for $5.79, with interest from that day, and costs, will continue and remain full force as if said decree of the fifth of May, 1887, had never been rendered. And it is further adjudged and ordered that the service of an office copy of this order upon the said defendants shall have the same force and effect as the execution upon them of a writ of prohibition issued in pursuance thereof. And it is further adjudged and ordered that the plaintiff, the Ensign Manufacturing Company, recover against the defendant, James W. Carroll, its costs by it expended in the prosecution of this proceeding.

WRIT ALLOWED.