# CHARLESTON.

CITY OF CHARLESTON *v.* BELLER *et al.*

Submitted April 15, 1898—Decided April 20, 1898.

1. MUNICIPAL CORPORATIONS-*Violation of Ordinance-Public Wrong.*
   Violation of the public ordinances of cities, towns, and villages are strictly criminal in nature, being offenses against the public. and not merely private wrongs. (p. 46.)

2. MUNICIPAL CORPORATIONS—*Violation of Ordinance—Costs.*
   In prosecutions for such offenses, costs are not recoverable against such city, town, or village. (p. 49.)

3. PROHIBITION
   Prohibition is the proper remedy to prevent the enforcement, by execution, of an unauthorized judgment for costs. (p. 50.)

Application by the city of Charleston for a writ of prohibition against F. A. Guthrie, Judge, and George Beller. *Writ Awarded.*

C. B. Couch and Flournoy, Price & Smith, for petitioner.

W. E. Chilton, J. H. Holt, and Lowenstein & McWhorter, for respondent.

Dent, Judge:

The city of Charleston prays a prohibition against the judge of the Circuit Court of Kanawha County, prohibiting the enforcement of a judgment for costs entered against the petitioner, in favor of one George Beller, in a prosecution for a violation of the ordinances of the petitioner originally instituted before the mayor, and appealed by the accused from his judgment to such circuit court. It is admitted that the petitioner would not be liable for costs at common law, and that they can only be imposed by virtue of statutory enactment. The statutes of this State have clearly provided for the allowance of costs in all civil proceedings to the party substantially prevailing; but in criminal proceedings they only allow costs to be recovered against the accused in case of conviction, and in some cases in his favor on aquittal against a private prosecutor, but never against the public, the State, or its authorized representative. A controversy is thus raised as to whether prosecutions for violations of the ordinances of municipalities are civil or criminal proceedings. The legal definition of crime at common law was a capital offense, and all other offenses were misdemeanors. It is now sought to limit the definition, not alone to capital offenses, but to such offenses as are declared to be criminal by positive legislative enactment, known as "felonies" and "misdemeanors," excluding therefrom offenses against the ordinances of municipalities, although imposed by legislative authority. The true definition of the word "criminal," however, as distinguished from the word "civil," as recognized by the laws of this State, beginning with section 3, Art. VIII, of the Constitution, defining the powers of this

Court, and ending with section 232, chapter 50, of the Code, relating to the duties of justices under town and village ordinances, is a violation of any law or ordinance of man subjecting the offender to public punishment including fine or imprisonment, and excluding redress for private injury, punitive or compensatory. Because section 232 provides that "the proceeding in such case shall be by summons in the corporate name of the town or village as plaintiff, and shall conform so far as practicable, to the regulations respecting civil actions before justices," the criminal character of the offense involved is not converted into a demand of a civil nature, for the reason that criminal proceedings, so far as practicable, and not repugnant thereto, always correspond to civil proceedings, unless otherwise provided. Proper process, unless otherwise ordered by the court, in all misdemeanor cases, is a summons, to be followed by a capias when necessary (section 14, chapter 158, Code), and in the name of the State as plaintiff. Imprisonment for debt, or arrest in civil cases, except for fraud, has become obsolete. So that section 232, in providing for summons in the name of the municipality as plaintiff, to be converted into a capias by indorsement when necessary, complies strictly with criminal procedure; the name of the municipality being merely substituted for the Stâte, to distinguish the prosecutions from each other, and control the disposition of the fines and costs when recovered. Nor is a mayor of any city, town, or village governed by section 231 to 233, inclusive, of chapter 50, Code. Being *cx officio* a justice, he has the right to conform his proceedings to these sections if he chooses so to do. *Ridgway* v. *Hinton*, 25 W. Va., 554; *Jelly* v. *Dils*, 27 W. Va., 282. His authority is not derived from these sections. Their only purpose, notwithstanding the mistakes of punctuation, which do not appear in Acts 1881, c. 8, nor Acts 1885, c. 36, was to confer on justices, strictly speaking,—not mayors,—the authority to try offenses against town and village ordinances, where the punishment was limited to not exceeding ten dollars fine or ten days' imprisonment. The reason that section 230 was not expressly included in section 233 was because it was self-acting, and in a proper case did not need the

aid of another section to make it applicable, its wording being as follows: "Every person sentenced to imprisonment under this chapter by the judgment of a justice, or to the payment of a fine of ten dollars or more (and in no case shall a judgment for a fine of less than ten dollars be given by a justice if the defendant, his agent or attorney object thereto), shall be allowed an appeal to the circuit court; * * * and the court shall proceed to try the case as upon an indictment or presentment, and render such judgment without remanding the case as the law and the evidence may require. If the judgment be against the accused, it shall include the costs incurred in the proceedings before the justice, as well as in the said court, including a fee of ten dollars for the prosecuting attorney, and the jailer's fees, if any." By the use of the words "under this chapter," this section is made applicable to the offenses included in section 231, when the punishment inflicted ·is imprisonment or a fine of ten dollars and the fine, if so fixed by ordinance, may always be ten dollars if the accused so require. The authority of a mayor of a city, town, or village is not derived from section 231, but exists independent of such section, by virtue of chapter 47, Code, or the special charter of incorporation granted by the legislature. By section 31, c. 58, Acts 1895, the mayor of the city of Charleston is made a justice of the peace within the city, and authorized to exercise all the powers and duties vested in justices, except jurisdiction in civil cases; thus clothing him with the full criminal jurisdiction of a justice, under sections 219 to 230, inclusive, of chapter 50 Code. But neither these sections nor section 231 invest justices or the mayor with any authority or jurisdiction over violators of the ordinances of the city. The mayor, thus being clothed with the jurisdictional powers of a justice in criminal offenses against the laws of the State, has such jurisdiction increased so as to include violations of the city ordinances by section 22, chapter 58, Acts 1895, which is as follows, to wit: "To carry into effect these enumerated powers, the council shall have power to adopt and enforce all needful orders by laws and ordinances not contrary to the laws and constitution of the state, and to prescribe, impose, and enforce reasonable fines and penalties, includ-

ing imprisonment, under judgment and order of the mayor or recorder of said city, or the persons lawfully exercising their functions.  * * *" This is not an increase of civil, but an increase of criminal jurisdiction; and the mayor, in exercising it properly, conforms his proceedings in all respects, so far as applicable, to the provisions of sections 219 to 230, inclusive, of chapter 50, or, when applicable, he may, at his option, conform to the provisions of section 232.  The manner of the procedure, whether by summons or warrant in the name of the town or State, cannot change the nature of the offense from a public crime to a private wrong.  Section 230, chapter 50, governs as to costs in all such cases; and there is no provision as to the recovery of costs by the accused in case of acquittal, which conforms to both the common and statute law.  Section 163 to 175, inclusive, of such chapter 50, and sections 4 to 11, inclusive, of chapter 138, are applicable alone to civil cases, and therefore this case is clearly exempt from the provisions thereof.  The provisions of section 13, chapter 161, Code, that "in no case shall there be a judgment against the state for costs," is a precautionary enactment on the part of the legislature, declaratory of the common law, made necessary from the fact that the chapter provided that certain criminal charges should be paid out of the State treasury; and, through fear from this concession that inference and implication might give rise to a liability on the part of the State for costs, this negative enactment was adopted to settle the question beyond dispute or quibble.

In its governmental capacity, a municipality is strictly a branch of the State government, within the extent of its limitations, both as to territory and powers granted.  And in the discharge of their duties, governmental and discretionary, its officers are public officers, for whose acts the municipality is in no wise liable.  *Gibson* v. *City of Huntington*, 38 W. Va., 177, (18 S. E. 447); *Brown's Adm'r* v. *Town of Guyandotte*, 34 W. Va., 299, (12 S. E. 707); *Thomas* v. *Town of Grafton*, 34 W. Va., 282, (12 S. E. 478); *Mendel* v. *Wheeling*, 28 W. Va., 233; *Orme* v. *City of Richmond,* 79 Va., 86; *City of Richmond* v. *Long's Adm'rs*, 17 Grat., 375; *Barnes* v. *District of Columbia*, 91 U. S., 540.  The en-

forcement of fines, penalties, and imprisonment under the ordinances of the municipality is a governmental duty for the protection of society against the lawless, and the preservation of peace and good order, and is purely a State or public function; and, while it is done in the name of the municipality, it is by the sovereignty of the State or the people; and therefore, in whatever case the State is exempt from liability for costs, the municipality is likewise. To hold otherwise is to make the municipality liable for the governmental acts of its officers, and subject it to a fine in all cases in which they fail to sustain prosecutions against alleged offenders of its ordinances, and thus subject it to imminent bankruptcy. While costs in civil cases are not penal, in criminal cases they partake of the nature of a fine. Code, chapter 161, section 11. The present case is a clear and effective illustration of what great harm could be done to the public if it were held liable for costs in the case of the failure of prosecutions for criminal violations of law. It is claimed by the respondent that this prosecution and all others similar are an abuse of the mayor's authority, and directly contrary to the resolutions of the common council of the city; and so the circuit court seemingly held, and yet mulcted the city in a fine, at least in effect, for the illegal and unauthorized acts of the mayor in his discretionary and judicial governmental capacities,—just such acts as the city in no event can be held responsible for; otherwise, it could be made liable for the governmental acts of two opposing factions, both claiming to be the legally constituted authorities thereof, and its increased burdens occasioned by such lawlessness would render municipal government unbearable to the public. Instead of being a protecting shield against crime in its manifold and insidious forms, it becomes a mere instrument for revenue only in the hands of its designing manipulators, without regard to the public service or the interests of the people. The corporate name of the "City of Charleston" is a mere nonentity, representative of the people residing in its corporate boundaries; and there is neither law nor justice in inflicting upon them the costs occasioned by public officers instituting public prosecutions without sufficient cause, or failing to sustain them by neglect, oversight, or incapacity when properly

instituted. As a part of the State sovereignty, they are entitled to immunity from such costs.

The palpable error of this Court in allowing costs against a town, as in the case of *Ridgway* v. *Hinton*, 25 W. Va., when they should have been awarded the town as not responsible therefor in any event,—for it was neither guilty of the error complained of nor liable for costs in such cases,—does not furnish a binding rule on this Court or any ininferior tribunal. When the attention of this Court is called to such mistakes,—the result of mere oversight,—it feels irresistibly impelled to correct the same forthwith, that the future baneful effects thereof may be prevented. The judgment of the circuit court being without law to sustain it, prohibition is the proper remedy to prevent its execution. *Norfolk & W. R. Co.* v. *Pinnacle Coal Co.*, 44 W. Va., 574, (30 S. E. 196); *Wilkinson* v. *Hoke*, 39 W. Va., 559, 403, (19 S. E. 520); *Manufacturing Co.* v. *Carroll*, 30 W. Va., 532, (4 S. E. 782); *West* v. *Ferguson*, 16 Grat., 270. Therefore the motion to quash is over-ruled, and a prohibition is awarded in accordance with the prayer of the petitioner.

*Writ Awarded.*