# CHARLESTON.

CLAIBORNE v. CHESAPEAKE & O. RY. CO.

Submitted January 25, 1899—Decided April 15, 1899.

1. INSTRUCTIONS—*Error.*

It is error to give an abstract proposition, as an instruction to a jury, which is calculated to mislead them. (p. 366)

2. INSTRUCTIONS—*Damages—Punitive Damages—Error.*

If the compensatory damages are sufficiently punitive, it is improper to instruct the jury to allow an additional sum as punitive damages· (p. 368).

3. INSTRUCTIONS—*Error.*

An instruction which sets forth the evidence as to part of the facts in issue, and ignores certain other facts proven, and on the former directs a finding in favor of the plaintiff, is erroneous. (p. 368).

4. INSTRUCTIONS—*Railroads—Arrest on Train—Error.*

An instruction that a proper officer of the state has the right to enter a train of cars, within the limits of his jurisdiction, and arrest a perpose guilty of a known breach of the laws of this State, and that the railroad company would not be liable for such arrest, is good, and it is error not to give it. (p. 369).

5. CRIMINAL LAW—*Deadly Weapon.*

It is unlawful for any person to carry about his person a razor for any purpose except for self-defense against the known and threatening danger of death or great bodily harm from some other person. (p. 370).

6.   RAILROADS—*Conductor—Arrest—Damages*.
    If a conductor as a conservator of the peace, causes the arrest
    of a person on justifiable probable cause of his guilt of an of-
    fense against the laws of the State, neither he nor the company
    he serves is liable for damages by reason thereof.   (p. 371).

7.   RAILROADS—*Conductor—Arrest—Damages—Punitive Damages*.
    If such an arrest is made without probable cause, and by rea-
    son of an honest mistake without actual malice, or a design to
    injure or oppress, the liability is only for compensatory dama-
    ges, and no additional sum can be added thereto as exemplary,
    punitive, or vindictive damages.   [p. 373].

Error to Circuit Court, Greenbrier County.

Action by George Claiborne against the Chesapeake &
Ohio Railway Company.   Judgment for plaintiff, and de-
fendant brings error.

*Reversed.*

SIMMS & ENSLOW, for plaintiff in error.

J. W. ARBUCKLE and J. C. CANFIELD, for defendant in
error.

DENT, PRESIDENT:

George Claiborne sued the Chesapeake & Ohio Railway
Company in the circuit court of Greenbrier County for false
imprisonment, and recovered a judgment for four hundred
dollars.   Defendant appeals.

The first error assigned is as to the court permitting
the evidence of William B. McWhorter, R. B. Jennings, W.
P. Camp, J. T. Leslie, and A. M. Nelson, as to the previous
good character of the plaintiff, to go to the jury, as his
character was not attacked in any manner by the defendant.
The plaintiff insists that this evidence was competent, for
the reason the defendant "had really attacked the charac-
ter of Claiborne, or rather his race, and expected, as it did,
to rely on that to prejudice the jury."   This is hardly a
good excuse, as the law presumes in favor of good char-
acter of either white or black, unless the contrary
is shown; and although African blood is given the pref-
erence over white, to the exclusion of the Indian, Mongo-
lian, and Filipino, under the naturalization laws of the
United States, and although the children of the three latter
classes, unless one of their parents was an African, and
not a white person, cannot be admitted to citizenship in

this country (section 2169, Rev. St. U. S.; 16 Am. & Eng. Enc. Law, 225), yet all the races are entitled to the same presumption of good character, in civil trials, in the courts of this State, and therefore evidence of good character is inadmissible. Even in civil actions, in which character is in issue, the plaintiff cannot introduce evidence of his good character until it has been assailed by the defendant. 5 Am. & Eng. Enc. Law (2d Ed.) 852. On page 866, the law is stated to be that, in actions for malicious prosecution, it is generally held that evidence of the bad character of the plaintiff is admissible for either of two purposes: First, in mitigation of damages; second, in rebuttal of evidence showing want of probable cause, in case the defendant thus assails the plaintiff's character, he has the right to sustain it, but not otherwise. The mere fact that the plaintiff is of African descent, and as a citizen of the United States, under the naturalization laws aforesaid, enjoys a distinction over his white neighbor, does not make it necessary for him to prove his good character before it is assailed. It is hard to see, however, how the defendant could be injured thereby, as the evidence could not make plaintiff's character any better than the law presumes it, unless he wished to take advantage of prejudice against plaintiff's race to offset the prejudice against the defendant's character as a corporation. This would hardly be permissible. The evidence, however, was improperly admitted, for the reason that it tended to mislead the jury from the issue they were trying. It was not a question of the defendant's good character, but whether the conductor was sustained, by probable cause, in directing his arrest and detention.

The second ground of error is the defendant's overruled objection to the following instructions: "The court instructs the jury that in actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct, or criminal indifference to civil obligations, affecting the rights of others, appear, or where legislative enactment authorizes it, the jury may assess 'exemplary,' 'punitive,' or 'vindictive' damages, these terms being synonymous." *Mayer* v. *Frobe*, 40 W. Va. 427, (22 S. E. 58). This instruction propounds the law in a proper case, but it is abstract, and makes no reference to the evidence or

facts proven. The giving of such instructions, if calculated to mislead the jury, is reversible error. *Sheppard* v. *Insurance Co.*, 21 W. Va. 368; *Pasley* v. *English*, 10 Grat. 236. The instruction tells the jury in what cases punitive damages are recoverable, and leaves them to infer that the case which they are considering belongs to such class, or the court would not have given it to them. It thus becomes the means of indirectly conveying to the jury the opinion of the judge as to the character of the case being tried, which is error. What cannot be done directly cannot be done indirectly. A trial judge should exercise great care not to intimate in any manner his opinion upon the facts at issue. "He cannot do so directly or indirectly, neither explicitly nor by innuendo." *State* v. *Dick*, 60 N. C. 440; State v. Ah Tong, 7 Nev. 152; *Neill* v. *Produce Co.* 38 W. Va. 228, (18 S. E. 563); *State* v. *Staley* 45 W. Va. 792, (32 S. E. 198). Nor is such an instruction proper in cases of this character, unless properly qualified. Corporations generally are not liable for the grossly fraudulent, malicious, oppressive, wanton, willful, reckless, or illegal conduct of their employes, affecting the rights of others, unless such acts are expressly or impliedly authorized or ratified by them, or are a breach of the duty of the protection owed to persons intrusting themselves to the care of such corporations, at their solicitation and for compensation. *Downey* v. *Railway Co.*, 28 W. Va. 742; *Ricketts* v. *Railway Co.*, 33 W. Va. 433, (10 S. E. 801); *Turner* v. *Railroad Co.*, 40 W.Va. 693, (22 S. E. 83); *Gillingham* v. *Railroad Co.*, 35 W. Va. 588, (14 S. E. 243). The attention of the profession is directed to the difference in the syllabus in the last case, as reported in 35 W. Va. 588, (14 S. E. 243), and 29 Am. St. Rep. 827. In the latter, the following syllabus appears: "A common carrier of passengers is liable in exemplary damages for the arrest and false imprisonment of a passenger without reasonable or probable cause, made or caused to be made by its conductor in charge of the train during the execution of the contract to carry, although such act on the part of the conductor was entirely unauthorized by the company, and was purely personal to himself." This appears to be a compilation from the points of the original syllabus and opinion made by the reporter, and not by the Court. It prob-

ably states the law correctly (except as to the use of the word "exemplary," which should be "compensatory"), as showing the duty of protection which the common carrier owes to its passengers against the willful, wanton, or malicious conduct of its servants. The conductor is placed in charge of the train, as the representative of the carrier, and therefore, if, instead of properly discharging the duty imposed upon, him, he willfully, wantonly, or maliciously injures a passenger, the law will not hear the carrier deny responsibility for his conduct for the reason that, through its authorized agent, it has been guilty of violating the duty it owed to the passenger to protect him from the misconduct of its agents in charge and of fellow passengers. When the "agent steps aside from his employment to gratify some personal animosity, or give vent to some private feeling, of his own," the principal is not generally liable, unless such acts were expressly authorized or ratified. For acts done within the scope of the agent's employment, the principal is liable.

In all cases where a corporation is liable for the willful, wanton, malicious, or illegal conduct of its employes, it is subject to exemplary or punitive damages. Indeed, in so far as the defendant is concerned in actions of tort sounding in damages, all damages are in their nature punitive, although as to the plaintiff, they may be merely compensatory. The defendant receives nothing for which he is made to compensate, but he is punished for the wrong committed by him in being compelled to make recompense to the plaintiff. If, therefore, the compensatory damages are sufficintly punitive, the defendant should not be punished twice, by being compelled to pay another sum, as so-called "punitive" damages. But if the damages allowed as compensatory are not sufficiently punitive and exemplary, then they may be increased, in a proper case, until they become so. Under the rule for ascertaining compensatory damages, since the *Pegram and Stortz Case*, 31 W. Va. 220, (6 S. E. 485), the damages allowed plaintiff have usually been sufficiently punitive, without the addition of any further sum to make them so. 1 Sedg. Dam. section 354. This latter is fully illustrated by the instructions given in this case. Inustruction No. 2 is as follows: "The court instructs the jury that if they find the defendant,

C. & O. Ry. Co., guilty, they are, in estimating plaintiff's damages, at liberty to consider the expense and loss of time, if any, incurred by the plaintiff, Claiborne; also the bodily and mental pain and anguish resulting from defendant's (C. & O. Ry. Co.'s) acts, as proved; and, for the outrage and indignity and humiliation put upon the plaintiff. to allow such damages as, in the opinion of the jury, will be a fair and just compensation for injuries sustained, not exceeding the amount sued for." Such an instruction as this, while not so expressed, certainly warrants damages that would be fully punitive, as far as the defendant is concerned. And to add another instruction, to the effect that, in addition to the sum found under instruction No. 2, the jury were authorized to find a further sum, to operate as a punishment on the defendant for the wrong committed, would be erroneous, as authorizing a double punishment for the same wrong. But to add to instruction No. 2 the qualification that, if the jury found the compensatory damages as ascertained by them were not sufficiently punitive, as to the defendant's wrongful conduct, they might increase the sum or damages until they became punitive, would not be erroneous, if justified by the evidence. The giving of instruction No. 5, without proper qualification, was therefore plainly erroneous.

The third ground of error is because of the giving instruction No. 7, which is as follows, to wit: "The court instructs the jury that if the raising of the windows and conduct of the plaintiff complained of occurred in the state of Virginia, and out of the State of West Virginia, and that the train upon which said plaintiff was a passenger stopped at Allegheny station, in Virginia, it was the duty of the conductor and the officers in charge of said train to put him off. And if the plaintiff, Claiborne, got off the train at Allegheny station, and the conductor in charge of said train permitted him to re-enter the same, where he rode quietly to Ronceverte, and without disturbing any one, the conductor had no authority to have him arrested, searched and ejected from the train, and imprisoned, and, if he did, the defendant is liable for his conduct and acts, and they must find for the plaintiff." This was also plainly erroneous, because it ignores the evidence that the plaintiff had on his person an

open knife, a bottle of whisky, and a razor,—certainly a deadly combination, and one which a person of good character and a law-abiding citizen is not in the habit of carrying around with him.   It is true the conductor did not know of the razor, but he did know of the annoying conduct of the plaintiff, and of the bottle of whisky, and he had been informed by his brakeman that the plaintiff had a long knife open on his person.

The fourth ground of error is the refusing to give the following instructions:   "The court instructs the jury that if they believe from the evidence that the plaintiff, while armed with dangerous or unlawful weapons, was on the train of defendant, within the corporate limits of Ronceverte, and it became known to the police of that town that he was so armed, the police had the right to arrest him on the cars, and take him therefrom, and the defendant, the Chesapeake & Ohio Railway Company, would not be liable for such arrest."   This instruction, under the evidence, should have been given, although it would have been more complete if the word "unlawfully" had been used before the word "armed," so as to more plainly show that the plaintiff was not carrying such weapons for any lawful purpose.   A police is a constable within the corporate limits, with all the powers of such an officer in criminal cases, and may arrest and detain any person he knows to be guilty of an offense against the laws of the state, until a proper warrant can be issued, or a trial and examination can be had.   *City of Charleston* v. *Beller*, 45 W. Va. 44, (30 S. E. 152).   The evidence discloses the fact that the plaintiff had a dangerous knife open on his person, and also was carrying a razor.   The law on this subject, though well known, is repeated here. Code, chap. 148, sec. 7: "If a person carry about his person any revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind or character he shall be guilty of a misde- meanor and fined not less than twenty-five dollars nor more than two hundred dollars, and may at the discretion of the court be confined in jail not less than one nor more than twelve months."   The razor was undoubtedly added to this section on account of the proneness of the Ameri- canized African to carry and use the same as a deadly

weapon. To such the razor is what the machete is to the Cuban. It is his implement of livelihood in time of peace, and his weapon of destruction in time of war. This is matter of common report. Under section 8, chapter 153, Code, a person armed with such dangerous or deadly weapon can be required to give a recognizance for good behavior and to keep the peace. The excuse given by the plaintiff, that he was carrying such razor to shave himself while in the country, is not a legal one. Such an excuse might be given by every person thus carrying a razor, and, if allowed as sufficient, would render the law of no affect. But the carrying of a razor is not excused unless the person is a quiet and peaceable citizen, of good character and standing in the community in which he lives, and has good cause to believe that he is in danger of death or great bodily harm at the hands of another person, and that he is in good faith carrying such razor for self-defense and for no other purpose. By the provisions of the statute, the carrying of a razor about the person is forbidden for any purpose except for self-defense against the known and threatened danger of death or great bodily harm from another person. So that the plaintiff, when arrested, was violating the statute law of this State on a train within the State, and within the corporate limits of the town of Ronceverte. Those who seek its assistance to redress their grievances should show themselves obedient to the law. Public policy forbids the rewarding of public malfeasors. A common carrier is under no obligation to protect a passenger from legal arrest, but only from illegal arrest.

The fifth and last assignment of error relied on is the refusal of the court to set aside the verdict as contrary to the law and the evidence. The facts are as follows: The conductor of one of the defendant's trains, on the 26th day of December, 1896, caused the plaintiff, George Claiborne, who was a passenger from Clifton Forge, Va., to Hinton, W. Va., on said train, to be arrested by the chief of police of the town of Ronconverte, for disorderly conduct, and carrying a dangerous weapon in a threatening manner, about ten o'clock at night. He was placed in the lockup until Sunday morning, when he was released on security until Monday morning. He was then tried before a jury for unlawfully carrying a razor on his person. The jury found

him guilty, but the mayor, for some reason, released him on payment of the costs. The evidence tends to show that, while the train was in Virginia, the plaintiff was drunk, and guilty of very boisterous and offensive conduct, and certain ladies (passengers) complained to the conductor. He was in the ladies' car, although he swears he was in the smoker. He was drinking, although he swears he was not drunk. Others thought he was. He handled his whisky bottle as though he were used to it, and did not care who knew it. The conductor, brakeman, and porter had to put down the window at different times, which he persisted in putting up, to the annoyance of other passengers. He was also continually moving around, some of the witnesses say staggering and rubbing against the lady passengers as he passed them. His conduct was highly offensive to them. After Allegheny station was left, he put an open knife in his pocket, and the brakeman warned the conductor with regard to it. When the train reached Ronceverte, the conductor asked the chief of police to go in and arrest and search the plaintiff, who was then sitting quietly in his seat. The policeman did so, and found on him a knife with the blade open, and a razor. He then took charge of him, and removed him from the train.

The conductor, under the laws of this State, is a conservator of the peace while in charge of the train, and the question is as to whether he had probable cause to justify him in having the plaintiff arrested. If he had, the company is not liable; if he had not, the company is liable, and the amount of the damages depends on the willfulness or illegality of the conductor's mistreatment of the plaintiff. The plaintiff's first instruction uses the words "just cause" for "probable cause," and it is to that extent erroneous, for, while "probable cause" is "just cause," "just cause" may be and is something else; and hence is misleading, so far as the jury is concerned, for it may be taken to mean full or complete cause, such as would secure the criminal conviction of the defendant. "Probable cause" is a state of facts actually existing, known to the prosecutor personally or by information derived from others, which would lead a reasonable man, of ordinary caution, acting conscientiously upon these facts, to believe a person guilty of an offense justifying his arrest, and is a question of law

for the court. *Vinal* v. *Core*, 18 W. Va. 2. "In determining whether the prosecution was founded on' probable cause, the existing state of facts must be viewed from the standpoint of the prosecutor and not from that of the accused."*Brady* v. *Stiltner*, 40 W.Va.289,(21 S.E. 927). The true question is, had the conductor reasonable grounds to believe that the plaintiff was carrying a dangerous and deadly weapon on his person, with evil intent?    The conduct of the accused, as detailed by the witnesses; his having a bottle of whisky, openly drinking in the ladies' car; his opening his knife, and putting it in his pocket open,—were certainly enough to afford the conductor probable cause to believe that the plaintiff was bent on mischief.  If a person would escape suspicion, he must avoid the appearance of evil.  The plaintiff evinced a disposition to entirely ignore the rights of other passengers, and give them all the annoyance possible, and, while he may have been sober, he acted like a drunken man, and, when reproved for his rude conduct, he opens his knife, and places it in his pocket, as though making preparation to use it.   The conductor was not bound, under such circumstances, to wait until some one was injured, but, having been informed that the plaintiff was armed with a dangerous and deadly weapon, he had the right, under section 8, chapter 153, Code, to turn him over to the proper officers of the law, that he might be required to give recognizance for his good behavior, and, after he was searched and found carrying a razor, in violation of section 7, chapter 148, Code, it was the duty of the officer to detain him, and take him before the mayor, not only to give the necessary peace bond, but also that he might be tried and punished, under the sixth clause of section 219 of chapter 50 of the Code.   The mayor, after he had been found guilty by a jury, under said section 7, Chapter 148, Code, and rightly so, gave him his liberty, on payment of the costs.   His excuse for so doing does not appear in the record.   He probably thought he had been punished sufficiently.   The way to vindicate a law is to enforce it. The Legislature intended that the carrying of razors should be stopped, and it did not leave any loopholes in the statute that a person might escape its wholesome effect by putting up the plea that the razor was carried for the purpose of shaving.  Such excuse is no excuse, un-

less it be in mitigation of the fine to be imposed. To make law-abiding citizens, law-breakers must be punished. It is unlawful, as heretofore, shown, to carry a razor about one's person, except in case of a law-abiding citizen of good character, for the purpose of self-defense from threatened death or bodily hurt from another person. And it were better if this reservation were expunged, especially so far as the razor is concerned. If, however, the question of probable cause were against the plaintiff, this is not a case for punitive damages. "The rule for the measure of damages, in cases where the malice necessary to sustain the action is such only as results from a groundless act, and there is no actual malice or design to injure and oppress, is to allow compensatory damages,—that is, damages to indemnify the plaintiff, including injury to property, loss of time, and necessary expenses, counsel fees, and other actual loss,—but not to allow vindictive or punitive damages, to punish the defendant." *Ogg* v. *Murdock*, 25 W. Va. 139. In this case there is nothing showing, on the part of the conductor, any actual malice or design to injure and oppress plaintiff. On the contrary, his whole object appears to have been to protect the passengers under his care from the rude and disorderly conduct of the plaintiff, and protect himself and the other employes of the defendant from the threatening attitude of the plaintiff. He may have mistaken plaintiff's intentions and character, but the plaintiff's conduct produced this mistake, and the conductor was justified in acting promptly. In so doing he was not guilty of wanton, willful, or malicious conduct, or criminal indifference to civil obligations, but was simply endeavoring to discharge his duty towards his employers, in obedience to the law. *Edgerly* v. *Railroad Co.*, (N. H.) 36 Atl. 558; *Railroad Co.* v. *Pillow*, 76 Pa. St. 510; *Flint* v. *Transportation Co.*, 34 Conn. 534; 1 Fetter, Carr. Pass. section 329. If any damages could possibly be allowed, as the case now stands, they could only be compensatory. The jury allowed punitive damages, under the erroneous instructions of the court. The judgment is reversed, the verdict of the jury is set aside, and a new trial is awarded.

Note by BRANNON, JUDGE:

I concur in the judgment. I do not however, regard instruction

5 as abstract. It is general, but not abstract. I regard it as erroneous and bad law in this case, because our decisions hold that there can be no exemplary, vindictive, or punitive damages against a corporation, unless the tort done by the agent was ordered or ratified by the corporation. Only compensatory damages can be given. *Ricketts* v. *Railway Co.*, 33 W. Va 433, (10 S. E. 801).

*Reversed.*