# CHARLESTON.

## STATE v. HON. J. M. WOODS, JUDGE *et al.*

Submitted November 13, 1922. Decided November 14, 1922.

1. CRIMINAL LAW—*Defendant for Good Cause Shown May Be Granted More Than One Change of Venue.*

   Secs. 15, 16 and 17 of chapter 159 of the Code, providing for a change of venue in a criminal case, properly construed in consonance with the spirit of sec. 14, art. 3 of the constitution, guaranteeing to the accused a fair and impartial trial, does not prohibit more than one change of venue upon petition of the accused and for good cause shown. (p. 337).

2. SAME—*Circuit Court to Which Case Has Been Transferred May Grant a Further Change of Venue for Good Cause Shown.*

   Where there has been a change of venue in a criminal case to another county from that in which the indictment was returned, the circuit court of the county to which the case has been ordered has jurisdiction to hear and determine the petition of the accused for a further change of venue and to award a further change if good cause therefor be shown. (p. 337).

3. PROHIBITION—*Appellate Court Will Not Review Evidence to Determine if Lower Court Abused Discretion in Awarding Second Change of Venue.*

   On an application for a writ to prohibit such court from entering an order awarding to the accused a second change of venue, the appellate court will not review the evidence on which the lower court's action is based to determine if the judge thereof has or has not abused his discretion. (p. 339).

Application for writ of prohibition by the State of West Virginia against Hon. J. M. Woods, Judge, and others.

*Writ refused.*

*John T. Porterfield, John Chaffin* and *A. M. Belcher,* for petitioner.

*C. J. Van Fleet, T. C. Townsend* and *H. W. Houston,* for respondents.

LIVELY, JUDGE:

This proceeding is an application for a writ of prohibition

against Hon. J. M. Woods, judge of the circuit court of Jefferson county, to inhibit him from awarding to C. F. Keeney, who is indicted as accessory to the murder of George Munsey in Logan county, a second change of venue.

Keeney and others were indicted at the September, 1921, term of the circuit court of Logan county, as accessories before the fact to the murder of George Munsey, in that county, and upon his petition for good cause shown the trial of the case was transferred by that court to the circuit court of Jefferson county. The indictment was one of the results of what is termed the "armed march" of certain miners, members of the United Mine Workers of America, from the counties of Kanawha and Boone to the non-union mines in the county of Logan in the year 1921. Many other indictments for various offenses arising out of this armed march were returned by the grand juries in both Logan and Kanawha counties, and a large number of these cases was also transferred, at the same time, for trial to the circuit court of Jefferson county. The trial of the first of these indictments in that county on a charge of treason against William Blizzard resulted in an acquittal. Afterwards, Rev. Wilburn and his son John Wilburn, who were separately tried, were convicted of murder in the second degree. Walter Allen was next tried and convicted of treason. The trial of Keeney upon an indictment as accessory to the murder of Munsey was set for the 23d day of October, 1922, and when his case was called he presented his petition for a change of venue, alleging, among other things, that there had arisen such a bias of prejudice against him and his co-defendants in the county of Jefferson that he could not be afforded a fair and impartial trial therein, and in support of his petition filed numerous affidavits. The state resisted this motion for change of venue, replied to the petition, and supported its opposition by numerous affidavits. The circuit judge, after mature consideration, announced his intention to grant the prayer of the petition and award a change of venue, and thereupon the state announced its intention of applying to this court for a writ of prohibition, and all proceedings were

staid until the decision of this court. This court promptly rendered its decision through its president, Judge POFFEN-BARGER, who orally announced the decision from the bench, refusing to award the writ, on the 14th of November, 1922.

The state contends that the circuit court of Jefferson county had no jurisdiction to award a second change of venue to the defendant; that the constitution and statutes of this state contemplate only one change of venue and that from the county in which the indictment is returned, and there having been one change of venue from Logan county to Jefferson county, the letter, spirit and reason of the constitution and statute have been fully satisfied and exhausted and that the lower court had no jurisdiction except to try the case. The circuit court held, and counsel for defendant insisted, that the constitutional and statutory provisions do not limit the defendant to one change of venue. Thus the controlling issue is raised.

A preliminary point is raised by defendant's counsel, in which they assert that prohibition is not the proper remedy. If the lower court had no jurisdiction to award the second change of venue or has exceeded its jurisdiction in so doing, then prohibition will lie. It is an ancient common law remedy issuing from superior courts of common law to the inferior courts to restrain the latter from excess of jurisdiction. Under our statute the writ lies as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or having such jurisdiction, exceeds its legitimate powers.

The question here for decision depends upon a proper construction of section 14 of the bill of rights, and sections 15, 16 and 17 of chap. 159 of the Code. They are as follows:

"§14. Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay and in the county where the alleged offense was committed, unless upon petition of the accused, and for good cause shown, it is removed to some

other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witnesses against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defense; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.''

''§15. Change of Venue.—A circuit court may, on the petition of the accused and for good cause shown, order the venue of the trial of a criminal cause in such court, to be removed to some other county.''

''§16. When the venue is so changed, the court making the order shall recognize the witnesses and the accused (if the offense be bailable, and bail be given) to appear on some certain day before the court to which the case is removed; if the offense be not bailable, or the bail required be not given, the court shall remand him to its own jail and order its officers to remove him thence to the jail of the court to which the case is so removed, so that he shall be there before the day for the appearance of the witnesses.''

''§17. The clerk of the court that orders a change of venue, shall certify copies of the recognizance aforesaid, and of the record of the case, to the clerk of the court to which the case is removed; and such court shall proceed with the cases as if the prosecution had been originally therein, and for that purpose the certified copies aforesaid shall be sufficient.''

The able briefs of counsel have facilitated an examination of the decisions of the various states based on the different statutory provisions. These statutory enactments, especially with respect to the number of times a party may obtain a change of venue, are very dissimilar, and of course the decisions based thereon are necessarily variant. Some of the states, notably, Alabama, Arkansas, Indiana, Kentucky, Nebraska and Missouri expressly provide that only one change of venue may be had by the same party for the same cause Usually there is a provision in these statutes that the accused shall have change of venue as a matter of right upon filing his affidavit, sometimes supported by other affidavits,

showing cause. It is apparent that the decisions of courts under such statutes can be of little assistance in the instant case. In the absence of direct statutory provisions it has been held that at least a second change of venue may be had upon proper application therefor. "The fact that the venue has already been changed once can make no difference, as the object of the law is to provide the parties with a disinterested, unprejudiced and unbiased tribunal to adjudicate their cause." 27 R. C. L. page 818, sec. 38, title, "Number of changes permissible." To this effect is *People* v. *Hubbard*, 22 Cal. 34. In Iowa it was held that in order to obtain a second change of venue the affidavit for the second application must show the ground relied on did exist when the first application for change of venue was granted. *Schaentgen* v. *Smith*, 48 Ia. 359; *Michales* v. *Crabtree*, 59 Ia. 615. In Texas, although the statute allowed but one change of venue on the motion of the defendant in a criminal case, yet it was held that the court may of its own motion order a change, and the venue may be changed twice by the court in its discretion. *Augustine* v. *State*, 41 Tex. Crim. 59. In the case of *State* v. *Minski*, 7 Ia. 337, it appeared that the statute allowed either party a change of venue in a proceeding before a justice of the peace for certain causes, and then the case was to be sent to the next justice of the peace who should proceed to try the case. It was there held that more than one change could be had because there was no restriction in that regard in the statute except by implication. As before stated, an inspection of the decisions of the various states which hold that but one change of venue can be had in a criminal case, discloses that they are based upon the provisions of the statute expressly stating that but one change shall be allowed. However, in the case of *Price* v. *State*, 8 Gill, 295, the Maryland supreme court held that when the right of removal had once been exercised by either party there could be no second removal under the express terms of the act which provided that the removal must be made by the court in which the indictment is found, *and no other*. The constitution of that state then provided that the party

indicted in any of the county courts might apply to the court while the indictment was pending and have his cause removed and tried in an adjoining county. The court said that if a second removal could be had, "why not a third, a fourth, and as many removals as there are counties in the state, until, ultimately, the cause, if tried at all is to be tried some place the most remote and inconvenient to all who are witnesses or otherwise connected with it, and after a period of time in which material testimony in the cause had been lost?" The court said, however, that irrespective of such reasons of public policy, the statute by its express terms, which provided that the removal must be made by the court in which the indictment is found, and *none other,* was conclusive.

The various decisions which we have examined afford little aid in construing the above provisions of our constitution and statutes. This state is what is sometimes called a "common law state," and section 21 of article VIII of the Constitution provides, "such parts of the common law, and of the laws of this state as are in force when this article goes into operation, and are not repugnant thereto, shall be and continue the law of the state until altered or repealed by the legislature." And section 5 of chapter 13 of the Code provides that "the common law of England, so far as it is not repugnant to the principles of the constitution of this state, shall continue in force within the same, except in those respects wherein it was altered by the general assembly of Virginia before the 20th day of June, 1863, or has been, or shall be, altered by the legislature of this state."

What was the common law with respect to change of venue in criminal cases? It is well established by a review of the decisions of English courts that at common law the court of Kings Bench had the inherent power to grant changes of venue whenever it appeared that fair and impartial trials could not be had. In *The Queen* v. *Palmer,* 5 El. & Bl. 1024, Lord Campbell in granting a petition for removal to another county on the ground that an impartial trial could not be had where the indictment was found, asserted the jurisdiction

of the court to pass upon and grant such motion. And it was said by Crampton, J., in *The Queen* v. *Conway,* 7 Ir. C. L. 507, ''There is another common law right equally open to defendants and prosecutors, that where it appears that either party cannot obtain a fair and impartial trial in the proper county, then this court has jurisdiction to take the case out of the proper county, as it is called, and to bring it into an indifferent county. This jurisdiction to change the venue has been exercised by this court from a very early period. We have reported cases, where the doctrine is laid down in emphatic language; we have the practice of the court of Queens Bench in England independently, of any practice of our own court. The general jurisdiction of the court, in a proper case, to change the venue from one county to any other, cannot be the subject of doubt.'' Lord Chief Justice Kenyon said in the case of *The King* v. *County of Cumberland,* 6 T. R. 194 (1795), that it ''would be an anomalous case in the law of England if the court of Kings Bench did not have the power to order a cause removed for trial to a county where a disinterested jury might be had.'' It is said in Chitty's Criminal Law, (2 ed.) 201, 371, 491, that it has long been the common law of England that when an impartial trial cannot be obtained, the court of Kings Bench had the power of directing the trial to take place in the next adjoining county. In the case of *Croker* v. *Justices of the Superior Court,* 208 Mass 163, will be found a review of a large number of English cases which assert that at com- mon law the courts of that country had the inherent power to grant changes of venue in proper cases. There seems to be no question that this inherent power was exercised by the court of Kings Bench for many, many years prior to the dis- covery of America. And nowhere do we find that at· common law, the courts were limited to one change of venue only.

It would appear, therefore, that section 14 of our bill of rights, under consideration, is but declaratory of the common law, but limits the right of change of venue to the accused for good cause shown. The power inherent in the courts at common law has not been changed by our consti-

tution and statutes except to limit the change of venue where it is asked for by the accused and upon good cause shown. The accused is entitled to a trial in the county where the offense is alleged to have been committed, notwithstanding that the sentiment therein may be vastly in his favor and ·against the prosecution. If he has lived a good life he is entitled to be tried by jurors who know that fact and not to be dragged from home to be tried among strangers. This provision in our bill of rights accentuates the jealous consideration and care which the policy of our laws throws around a person who is accused of crime. It is all summed up in the common expression that the prisoner must have a fair and impartial trial. It is particularly accentuated in our criminal laws that the accused is entitled to such trial and to the calm, deliberate and uninfluenced judgment of his peers. Orderly constituted government demands such trial. This being the spirit and intention of our constitution and statutes, can we say, in view of the rule at common law, that one accused of a serious crime shall not have more than one change of venue when these provisions do not prohibit more than one? Shall we not liberally construe these provisions to effect the recognized policy of our criminal laws? Statutes in regard to change of venue are ordinarily construed liberally, *Buck* v. *Eureka,* 27 Cal. 135; *State* v. *Spokane,* 40 Wash, 443; 5 Ann. Cas. 775. The courts at common law had the inherent power to award more than one change of venue; and as our constitution, as above stated, and the statutes carrying it out, do not expressly provide that but one change shall be allowed, we cannot come to the conclusion that it was the design of the organic law and these enactments to totally abrogate the common law in that regard. Many of the states, as has hereinbefore been shown, have declared in unmistakable terms in their statutes regulating changes of venue, that only one change shall be allowed. We do not feel disposed to trespass upon the legislative power and by a judicial construction say that the people in adopting the constitution and the legislature in enacting the statute intended that only one change of venue should be allowed to an accused. If the legislature

intended to do so, the terms used should be plain and unequiv-
ocal.    It will be noted that these provisions do not say to
what particular county the change shall be made. They say
"to some other county." Applying the rule of liberal con-
struction, and in view of the common law on this subject,
and·in view of the policy that every safeguard should be
jealously afforded to one accused of crime, we are constrained
to hold that one accused of crime is not limited to one change
of venue, bringing the section of the constitution under con-
sideration and the statutes passed to give effect thereto, within
the plain spirit of our bill of rights, guaranteeing to the
accused a fair and impartial trial.

The reason given by the Maryland court in the case of
*Price* v. *State*, 8 Gill 295, above referred to, that if more than
one removal be had, "why not a third, a fourth, and as many
removals as there are counties in the state, until, ultimately,
the cause, if tried at all, is to be tried at some place the most
remote and inconvenient to all who are witnesses or other-
wise connected with it, and after a period of time in which
the material testimony in the case has been lost," and which
reason is insisted upon by the state in this case, we think is
untenable, because, as was said by Judge POFFENBARGER in his
verbal announcement on the bench of our decision, that, "It
is not to be assumed that any circuit judge is going to refuse
to make proper inquiry into the cause of removal and grant
a removal unless his conclusion is warranted by his investi-
gation." Under our statute, the case cannot be removed
upon the mere petition of the accused. The state has the
same right to be heard as the accused, and the petition for
the change must show good cause for such change. It can-
not be presumed that the circuit court will abuse its discre-
tion and grant a change which is not warranted after careful
investigation.

Lastly, it is insisted that the circuit court is in error in
allowing defendant a change of venue from Jefferson county,
because the affidavits and other evidence before the court
did not show good cause therefor. We cannot consider this
assignment of error in this proceeding. The only question

we have here proper to be considered is whether the lower court has acted without, or in excess of, its jurisdiction. We cannot, in this proceeding, determine whether it has abused its discretion and arrived at an erroneous conclusion from the evidence before it.

The rule will be discharged.

*Writ refused.*