STATE *ex rel.* OSCAR COSNER

*v.*

ERNEST A. SEE, *Judge of the Circuit Court*
*of Mineral County, et al.*

(No. 9910)

Submitted January 8, 1947.  Decided March 4, 1947.

*H. G. Shores, Howard P. Shores* and *Emory Tyler* for petitioner.

*Vernon E. Rankin,* for respondents.

HAYMOND, JUDGE:

In this original proceeding in prohibition, the petitioner, Oscar Cosner, seeks to prevent the respondents, the Honorable Ernest A. See, Judge of the Circuit Court of Mineral County, West Virginia, the clerk of that court, and the clerk of the Circuit Court of Tucker County, West Virginia, from trying him, in Mineral County, upon an indictment returned against him by a grand jury of that county for murder charged to have

been committed by him in Mineral County, by a jury summoned from the nearby county of Tucker, pursuant to an order entered by the Circuit Court of Mineral County on November 7, 1946. Upon his petition this Court, on November 15, 1946, issued a rule against the respondents to show cause why the writ prayed for should not be awarded. Before the return of the rule, the respondent, the Judge of the Circuit Court of Mineral County, filed a demurrer and an answer to the petition. The petitioner filed a special replication to the answer. Upon these pleadings and upon the record of the proceedings in the trial court, this cause was submitted to this Court for decision upon the merits.

Upon the issuance of the rule, the Circuit Court continued the trial of the indictment until after the decision of this Court and recalled the writ of venire facias which had been issued by the trial court for forty-eight jurors from Tucker County.

· The material facts are not disputed and the questions involved are questions of law. These questions are: (1) Is Section 20, Article 1, Chapter 52 of the Code, 1931, constitutional; and (2) if the statute is constitutional, did the trial court exceed its legitimate powers under the statute in ordering a jury to be summoned from Tucker County?

The petitioner, Oscar Cosner, was indicted in October 15, 1946, by a grand jury attending the regular October, 1946, term of the Circuit Court of Mineral County, for the murder of his wife in that county. On October, 16, 1946, he entered a plea of not guilty to the indictment, and the court set the case for trial on October 30, 1946. On that day the trial was continued until November 6, 1946, at which time, the State and the defendant, who was present in person and represented by counsel, being ready, the trial began. Of the original venire of forty-eight jurors, thirty-eight were then in court. Only eight of this number were accepted as qualified. Before proceeding further with the selection of the jury for the trial of the case, the judge of the trial court, without any sugges-

tion or request from the State or the defendant, expressed the belief that a qualified jury could not be conveniently found in Mineral County and that he should call a jury from another county.

Both the Prosecuting Attorney and the attorney for the defendant urged the court to call fifty additional jurors. This the court refused to do but, after some hesitation, did cause forty more jurors to be summoned. Twenty-eight of these jurors appeared during the afternoon session of the court, and from that number only two qualified jurors were obtained. There being only ten qualified jurors available from the two groups of thirty-eight and twenty-eight, the court again gave expression to the view that no more jurors should be called from Mineral County and that a jury should be summoned from another county. Counsel for the defendant and the Prosecuting Attorney requested the court to call fifty additional jurors from the county, which request the court refused to grant. Instead, the court directed the clerk to call forty additional jurors to report the following day, November 7, 1946. At that time thirty of these jurors were present and from that number nine more qualified jurors were accepted, making a total of nineteen qualified jurors who were subject to further examination and challenge by the Prosecuting Attorney and the attorneys for the defendant. At this stage of the proceeding the court expressed the intention to summon a jury from another county and refused the request of counsel for the defendant that ten more jurors from Mineral County be called for the purpose of obtaining one additional juror to complete a panel of twenty jurors.

The defendant, after objecting and excepting to the foregoing action of the trial court, established, by evidence produced in open court, that only ninety six jurors had been examined and only one hundred and twenty eight of the five hundred and thirteen persons whose names appeared on the current list of available jurors of the county had been summoned; that three hundred and eighty five persons remained on the jury list who had not

been called or examined as jurors; and that from a population of approximately twenty one thousand persons in Mineral County there were at least two thousand additional available jurors. Despite these facts, which are not challenged or controverted, the court voiced the opinion that a jury should be summoned from the nearby county of Tucker, in the Twenty-first Judicial Circuit of this State, which is composed of the counties of Mineral, Grant and Tucker. The defendant objected to this course of action for reasons which were assigned. The court overruled the objections of the defendant and, by order entered of record, directed that forty eight jurors from Tucker County be drawn to appear at the court house of Mineral County, West Virginia, on December 9, 1946, for the trial of the case, which order was certified to the clerk of the Circuit Court of Tucker County, and that a writ of venire facias be issued by the clerk of the Circuit Court of Mineral County to the sheriff of Tucker County commanding him to summon such jurors for service in Mineral County. To this action of the court the defendant entered timely objections and noted his exceptions.

In his answer the respondent, the Judge of the Circuit Court of Mineral County, admits, in substance, the occurrences detailed above, insists that they are fully authorized by the statute to which reference has been made, and states that he will proceed to try the defendant upon the indictment in Mineral County by a jury summoned from Tucker County, unless prohibited from so doing by this Court.

The contentions of the respondent, respectfully asserted and vigorously urged, are that the statute, Section 20, Article 1, Chapter 52, Code of West Virginia, 1931, is constitutional, and that in the action taken by the trial court, under the statute, it has not abused its discretion or exceeded its legitimate powers or authority. The petitioner insists that the statute deprives him of his common law right to be tried by a jury of Mineral County where the offense charged against him is alleged to have

been committed, a right which he contends is secured to him by the Constitution of this State, and that the statute is violative of Section 14 of Article III of the Constitution of West Virginia, and of the Sixth Amendment and the Fourteenth Amendment to the Constitution of the United States.

The contention of the petitioner that the statute is repugnant to the Sixth Amendment to the Federal Constitution is devoid of merit. That amendment provides in part that, in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. The Supreme Court of the United States has consistently held that this amendment does not apply to the trial of criminal prosecutions by a State, *Gaines* v. *Washington*, 277 U. S. 81, 48 S. Ct. 468; 72 L. ed. 793; and that the first ten amendments to the Federal Constitution apply only to the procedure and the trial of causes in the Federal Courts and do not impose limitations upon such action in State Courts. *Spies* v. *Illinois*, 123 U. S. 131, 8 S. Ct. 21, 31 L. ed. 80. See also *Ex parte McNeeley*, 36 W. Va. 84, 14 S. E. 436. When, however, violation of the rights enumerated in these amendments amounts to a denial of due process of law, within the meaning of the Fourteenth Amendment to the Federal Constitution, conduct of that character by a State is forbidden and condemned by that amendment. *Louisiana* v. *Resweber*, 328 U. S. 833, 66 S. Ct. 1382, 91 L. ed. 359; *Palko* v. *Connecticut*, 302 U. S. 319, 58 S. Ct. 149, 82 L. ed. 288. Some of the rights which are protected against forbidden action of the Federal Government, by particular amendments to the Federal Constitution, are said to be implicit in the concept of ordered liberty, and for that reason, by virtue of the Fourteenth Amendment, but not because of the individual amendments, they may not be denied or abridged by any State.

The contention of the petitioner that the statute here assailed, Section 20, Article 1, Chapter 52, Code, 1931, violates the due process provision of the Fourteenth Amendment, and deprives him of the rights guaranteed to him by that amendment, will be hereinafter discussed and resolved.

The petitioner insists that Section 20, Article 1, Chapter 52, Code of West Virginia, 1931, deprives him of his common law right to be tried by a jury of Mineral County, a right which he asserts is preserved and guaranteed to him by the Constitution of this State, and, for that reason, is in contravention of Article III, Section 14 and Article VIII, Section 21, of that fundamental law. This contention raises questions of grave practical importance which it is the duty of this Court to consider and determine.

In the correct solution of these issues it is appropriate to determine the character of the right of the accused to a trial by jury as it existed at common law with respect to the place where the trial should be conducted and the locality from which the members of the jury should be selected. On these points the authorities are not in complete accord. One line of decisions adheres to the view that at common law the accused must be tried in, and by a jury from, the vicinage or county in which the offense is alleged to have been committed. A case which advances that opinion is *People* v. *Powell*, 87 Cal. 348, 25 P. 481, 11 L. R. A. 75, in which the Supreme Court of California declares that "by the common law, the trial of all crimes is required to be by a jury selected from the vicinage or county where the crime is alleged to have been committed." In that case it was held that a provision of the Constitution of that State, that the right of trial by jury shall be secured to all and remain inviolate, confers upon a prisoner what it stated to be the common law right to have the jury selected from the county where the alleged offense was supposed to have been committed and that the section of the penal code which provided for a change of venue without the con-

sent of a defendant on application of the prosecution, if no jury can be obtained in the county where the proceeding is pending, was unconstitutional. In the opinion emphasis is given to the following passage from Blackstone's Commentaries, Book 4, page 350:

"'When, therefore, a prisoner on his arraignment has pleaded not guilty, and for his trial hath put himself upon the country, which country the jury are, the sheriff of the county must return a panel of jurors, *liberos et legales homines, de vicineto;* that is, freeholders, without just exception, and of the *visne* or neighborhood; which is interpreted to be of the county where the fact is committed."

Reliance is also placed upon a quotation from Cooley, Constitutional Limitations, 5th ed., page 392: "The jury must also be summoned from the vicinage where the crime is supposed to have been committed.", and upon this passage in Story, Constitution, Section 1781: "By the common law, the trial of all crimes is required to be in the county where they are committed. Nay, it originally carried its jealousy still further, and required that the jury itself should come from the vicinage or the place where the crime was alleged to have been committed." Other cases which adopt this view, to which reference may appropriately be made, are: *Althoff* v. *State,* 209 Ind. 42, 197 N. E. 896, 102 A. L. R. 1031; *Buckrice* v. *People,* 110 Ill. 29; *Swart* v. *Kimball,* 43 Mich. 443, 5 N. W. 635; and *State* v. *Kemp,* 34 Minn. 61, 24 N. W. 349. See also 35 C. J., pages 146 and 238. The *Powell* case and *Swart* case involved the right of the State to a change of venue, which change of venue, by the Constitution of West Virginia, may be had only upon the petition of the accused, and for good cause shown. Article III, Section 14, Constitution of West Virginia. In the *Althoff* case the right of the State to try the defendant by a jury selected from a county other than that in which the trial was held and the alleged offense was committed was in issue; and in the *Buckrice* case the right of the State to try the accused in a county adjoining the county in which the crime was committed was involved. These decisions

are referred to because of the discussion in the opinions and the views there expressed concerning the nature of the right of the accused to a trial by jury as it existed at common law.

That this right, at common law, was not an absolute right in the accused to be tried in the county in which the offense was committed by a jury obtained from that county, but was conditioned upon the possibility of a fair and impartial trial in that county, is the view expressed in another, and perhaps more numerous, group of cases. *Barry* v. *Truax*, 13 N. D. 131, 99 N. W. 769, 65 L. R. A. 762, 112 Am. St. Rep. 662, 3 Ann. Cas. 191; *Commonwealth* v. *Reilly*, 324 Pa. 558, 188 A. 574; *State* v. *Brown*, 103 Vt. 312, 154 A. 579; *Hewitt* v. *State*, 43 Fla. 194, 30 So. 795; *State* v. *Miles*, 43 Idaho 46, 248 P. 442; *State* v. *Cutshall*, 110 N. C. 538, 15 S. E. 261, 16 L. R. A. 130; *People* v. *Peterson*, 93 Mich. 27, 52 N. W. 1039; *State* v. *Holloway*, 19 N. M. 528, 146 P. 1066, L. R. A. 1915 F. 922; *State ex rel. Hornbeck* v. *Durflinger*, 73 Ohio State 154, 76 N. E. 291; *State ex rel. Fletcher* v. *District Court of Jefferson County*, 213 Iowa 822, 238 N. W. 290, 80 A. L. R. 339. See also 1 Chitty, Crim. Law, 5th Am. edition, Section 201. In *Barry* v. *Truax*, 13 N. D. 131, 99 N. W. 769, 65 L. R. A. 762, 112 Am. St. Rep. 662, 3 Ann. Cas. 191, the Court, in discussing the contention there advanced by the defendant, that at common law the prosecution had no right to a change of venue, and that it was the unqualified right of the defendant to demand a jury from the county where the offense was committed, says:

"* * * We do not think, however, that this contention accords with the fact. We are of opinion that neither the common law as it existed in England at the time of the Revolution, nor as adopted in this country, gave the defendant an absolute right to a trial in the county of the offense. This is, at least, the opinion of a large number of American courts, whose views are entitled to most respectful consideration, and, as we shall hereafter see, it is sustained by the English cases and text writers. * * *"

In *State* v. *Cutshall*, 110 N. C. 538, 15 S. E. 261, 16 L. R. A. 130, commenting upon a section of the Constitution of North Carolina which provides that no person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men, the Supreme Court of that State says that the section has been construed not only "to guaranty to every person (whether a citizen of this state or of another commonwealth) a trial by jury in all cases, which were so triable at common law, (such as an indictment for a felony,) but a trial by his peers of the vicinage, unless, after indictment, it should appear to the judge necessary to remove the case to some neighboring county, in order to secure a fair trial."

In our own case of *State* v. *Lowe*, 21 W. Va. 782, at page 786, Judge Green, discussing the language of Article III, Section 14, of the Constitution of this State, relating to the removal of the trial of a criminal case to a county other than the county in which the alleged offense was committed, says:

"This provision of our Constitution confers on a person accused of crime, with reference to the place where he is to be tried, the privileges, which the common law conferred on him, thus making these common law privileges, of the accused constitutional rights, which the legislature cannot take from him without his consent. There never has been a question as to the fact, that all the privileges conferred on the accused by these constitutional provisions were also conferred on him by the common law. For by the common law crimes of every description could only be prosecuted in the county wherein they were committed; but if any impartial trial could not be had in that county, the case might certainly be removed at the instance of the accused, and it might be perhaps at the instance of the State."

In a note to the case of *State ex rel. Fletcher* v. *District Court of Jefferson County*, 213 Iowa 822, 238 N. W. 290, 80 A. L. R. 339, at page 355, it is stated that in England it seems to be well settled that, where an impartial trial can not be had in the county where the indictment

is found, a change of venue may be made to, or at least the jury may be drawn from, another county, on the motion of the prosecutor. This statement, in so far as it deals with the right of the prosecutor to obtain a change of venue to another county, is supported by the cited cases of *Rex* v. *Harris* (1762), 3 Burr. 1330, 97 Eng. Reprint 858; *Rolleston* v. *Smith*, 100 Eng. Rep. 950; *Rex* v. *Davies* (1794), 5 T. R. 626, 101 Eng. Reprint 350; *Rex* v. *St. Mary* (1798), 7 T. R. 735, 101 Eng. Reprint 1226; *Coxe* v. *Harden*, 102 Eng. Reprint 811; and *Rex* v. *Thomas* (1815), 4 Maule & S. 442, 105 Eng. Reprint 897. The holdings of those cases, however, are not express authority for that part of the statement which asserts that a jury may be drawn from another county, as that question is not discussed or decided in any of them.

Consideration of the views expressed in the foregoing authorities justifies the conclusion that at common law the right of an accused to a trial by a jury of the county in which the offense was committed was a general, not an unconditional or absolute, right, and that this right was limited by the right to cause the proceeding to be removed to another county, upon the application of the prosecution or of the defendant when necessary to obtain a fair and impartial trial, and that, in this respect, there was no substantial difference between the trials of felonies and misdemeanors. See *Barry* v. *Truax*, 13 N. D. 131, 99 N. W. 769, 65 L. R. A. 762, 112 Am. St. Rep. 662, 3 Ann. Cas. 191.

The pertinent portion of Article III, Section 14, of the Constitution of this State provides: "Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offense was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county." This language clearly requires that the trial be by a jury of twelve men and that it be held in the county of the alleged offense, unless removed, upon the petition of the accused, and for good cause shown, to another

county. It abolishes the right of the prosecution, at common law, in a proper case, to cause the removal of the trial from the county of the alleged offense and renders it impossible for the trial to be had in any other county upon the application of the State or at the instance of the court.

This provision of the Constitution, however, does not state that the jury of twelve men, which it guarantees to the accused, shall be a jury of or from the county in which the alleged offense was committed. In this respect the language is different from the provision in the Sixth Amendment to the Federal Constitution for a trial by an impartial jury of the State and district wherein the offense shall have been committed, and from the provision in the Constitutions of some of the other States of the Union for a trial by an impartial jury of the vicinage or of the county in which the offense was committed.

The effect of the omission of an express requirement that the jury be of or from the county or the vicinage of the alleged offense from our present Constitution, which followed in that respect a substantially similar provision, Article II, Section 8, of the Constitution of this State of 1863, is to recognize and preserve, but not to embody in express terms, the right of trial by jury, and, without defining or incorporating it in detail other than to guarantee a jury of twelve men and a public trial without unreasonable delay, is also to leave the matter of the method of procuring and impaneling the jury and of regulating the procedure incident to a trial by jury to be dealt with by the Legislature, subject to Article VIII, Section 21, of the Constitution, which declares that such parts of the common law, and of the laws of this State as were in force when that article went into operation, and as are not repugnant to them, shall be and continue the law of the State until altered or repealed by the Legislature, and subject to Article III, Section 10, which declares that no person shall be

deprived of life, liberty, or property, without due process of law, and the judgment of his peers.

In the general consideration of these provisions, the following statement in the opinion in *Stokes* v. *People*, 53 N. Y. 164, is pertinent: "While the Constitution secures the right of trial by an impartial jury, the mode of procuring and impaneling such jury is regulated by law, either common or statutory, principally the latter, and it is within the power of the legislature to make, from time to time, such changes in the law as it may deem expedient, taking care to preserve the right of trial by an impartial jury."

The right of trial by jury is not conferred by the Constitution; but that right as it existed at common law when the Constitution was adopted is preserved by that instrument. *Lawhead* v. *Grand Lodge*, 115 W. Va. 475, 176 S. E. 860; *Lamb* v. *Strother*, 118 W. Va. 257, 189 S. E. 865.

The section of the Constitution last referred to unquestionably secures to a defendant in a criminal prosecution the right to a trial by a fair and impartial jury. By the foregoing provisions of the Constitution it was intended that the Legislature should have the power to change the common law methods with regard to trial by jury to the extent that its action does not run counter to or contravene the limitations stated in and imposed by the language of the Constitution. These provisions and the limitations which they impose, require a legally qualified jury of twelve men from the county in which the alleged offense is committed, for the public trial, without unreasonable delay, of the accused in that county, unless it clearly appears that a fair and impartial trial by a jury of the county can not be had, or unless, upon the petition of the accused, and for good cause shown, the trial is removed to some other county. It is also manifest that a qualified jury means a fair and impartial jury and that a public trial without delay, means a fair and impartial trial. *State* v. *Woods*, 92 W. Va. 331, 115 S. E. 470; *State* v. *Flaherty*, 42 W. Va.

240, 24 S. E. 885. The right to trial by jury is a substantial right which has always been very highly esteemed and carefully guarded against infringement, especially in criminal cases, and it can not be taken away by implication. 35 C. J. 147.

It therefore follows that the validity of Section 20, Article 1, Chapter 52 of the Code, 1931, which is challenged in this proceeding, must be determined in the light of these constitutional provisions, and by the proper application of the principles just stated.

The statute in question provides in its pertinent portion: "In any criminal case in any court, if in the opinion of the court, or the judge thereof in vacation, qualified jurors, not exempt from serving, can not be conveniently found in the county in which the trial is to be, the court, or the judge thereof in vacation, shall enter an order of record to such effect, and may cause so many of such jurors as may be necessary to be summoned from any other county."

Though this legislation has been heretofore considered by this Court in the case of *State* v. *McCoy,* 91 W. Va. 262, 111 S. E. 125, the question of its constitutionality was not there determined for the reason that it was not considered necessary in the decision of the case. In that case this Court held that notice to the accused of proceedings under the statute to cause jurors to be summoned from another county was assumed to have been intended by the Legislature, though it made no provision in the statute for such notice; and the judgment, entered upon a verdict of guilty by a jury drawn from another county upon an order entered by the trial court in the absence of the defendant and without notice to him, was reversed and a new trial awarded. No question of lack of notice arises in the present proceeding, however, as the defendant was present in person and by counsel at all times in the trial court and was accorded adequate opportunity to interpose his objections to the action of the court.

In the opinion in the *McCoy* case it is stated that, in effect, the summoning of a jury from another county amounts to a change of venue, and this statement is relied upon by the petitioner in support of his contention that the statute is unconstitutional. The statement ignores and tends to confuse the clear cut distinction between a change of venue in a criminal case and a trial of the case in the county of the alleged offense by a jury summoned from another county. They are entirely separate and distinct, although the grounds required to obtain either at common law appear to have been the same. The one, a change of venue, when granted, results in the removal of the case for trial from one county to another and, under the express language of the Constitution, can be effected only upon the petition of the accused, and for good cause shown; the other, often referred to as a change of venire, does not, if permitted, shift the place of the trial from one county to another. When a change of venire occurs, the trial remains in the county of the alleged offense with all the attendant benefits to the accused of holding it in that county, except the advantage of a local jury, but the jury is drawn from another county at the instance of either the State or the defendant, or without request from either, by the court on *its* own motion. The statement referred to above, not being a point of decision in the *McCoy* case, should be disregarded.

Though no prior decision by this Court, in which the question of the constitutionality of the challenged legislation has been passed upon, is available, recourse may be had to the decisions of the appellate courts of other jurisdictions in which somewhat similar statutes have been considered. In Virginia an almost identical statute, which has been in effect for many years, and at least since before the year 1853 when the case of *Wormeley* v. *Com.*, 10 Gratt. 658, was decided, has been given recognition and effect by the Supreme Court of Appeals of that State in a number of cases. In at least two of these cases it was held that under the statute the trial court was invested with a broad discretion in causing

a jury to be summoned from a county or a corporation, other than the one in which the alleged offense was committed, and its action in providing a jury from another jurisdiction was sustained. *Chahoon* v. *Com.*, 21 Gratt. 822; *Page* v. *Com.*, 27 Gratt. 954.

In *Craft* v. *Commonwealth*, 24 Gratt. 602, a murder case, under a statute which provided that in a criminal case in any court, if qualified jurors not exempt from serving can not be conveniently found in the county or the corporation in which the trial is to be, the court may cause so many as may be necessary of such jurors to be summoned from any other county or corporation, it was held that the corporation court of the town of Danville, in Pittsylvania County, had the authority to direct jurors to be summoned from a portion of the county outside the corporation, when an impartial jury could not be obtained within the corporation. In *Page* v. *Com.*, 27 Gratt. 954, a case in which the defendant was sentenced to death, the authority of a circuit court to direct jurors to be summoned from another county or corporation, under a similar statute dealing with criminal cases in that court, was sustained. In *Wormeley* v. *Com.*, 10 Gratt. 658, it appeared that it would be very difficult, if not impossible, to get jurors free from exception in the county where the court was sitting; in *Chahoon* v. *Com.*, 21 Gratt. 822, there was a showing that it would be inconvenient, if not impossible, to get a jury from the city of Richmond, the territorial subdivision in which the alleged offense was committed; and in *Sands* v. *Com.*, 21 Gratt. 871, there was a similar situation. In all those cases, the authority of the trial court to order a jury to be summoned from another jurisdiction under the statute was upheld by the appellate court.

In the later case of *Richards* v. *Com.*, 107 Va. 881, 59 S. E. 1104, decided in 1908, it was held, under the statute, which provided that in any criminal case, if qualified jurors not exempt from serving, cannot be conveniently found in the county in which the trial is to be, the court may cause so many of such jurors as

may be necessary to be summoned from any other county, that merely because there had been two previous protracted trials in which the juries had failed to agree, in each of which the panel had been selected without examining an unduly large number of jurors, the trial court was not authorized to summon a jury from another county. The Constitution then in force in Virginia, Article 1, Section 8, guaranteed the accused the right of trial by a jury of his vicinage. In the opinion the Court says:

"Manifestly it was not intended by the provisions of section 4024 of the Code that an accused person should be deprived of the right of 'a trial by a jury of his vicinage' (that is, of the county or corporation where he is to be tried) secured to him by the Constitution (section 8, art. 1 [Va. Code 1904, p. ccix]) and the laws of the state (Code 1887, § § 4018, 4019, and 4024 [Va. Code 1904, pp. 2114, 2115, and 2121]), merely because there had been two previous protracted trials in which the juries had failed to agree, and because in selecting the jury for the first trial 27 persons had to be summoned in order to get a panel of 16 qualified jurors, and in obtaining a jury for the second trial 48 persons were summoned, only 41 of whom, it seems, had to be examined in order to get a panel of 16 jurors free from exceptions. If these facts alone are sufficient to authorize a trial court to summon a foreign jury, the right intended to be secured by the Constitution and laws of the state would be of little value to the accused, and there would be comparatively few cases in which there was much public interest, or about which there was much excitement, where the court would not find it necessary to summon, or at least feel justified in summoning, a jury from another county or corporation."

In *Puryear* v. *Commonwealth*, 83 Va. 51, 1 S. E. 512, in which the defendant was convicted of first degree murder and sentenced to be hanged, it was held, without any reference being made to the statute, that the trial court should properly refuse to summon a jury from another county until an ineffectual effort has been made to obtain an impartial jury from the county where the trial is to take place. In the later cases of *Looney* v.

*Commonwealth,* 115 Va. 921, 78 S. E. 625, *Taylor* v. *Commonwealth,* 122 Va. 886, 94 S. E. 795, *Webb* v. *Commonwealth,* 154 Va. 866, 152 S. E. 366, and *Pannill* v. *Commonwealth,* 185 Va. 244, 38 S. E. 2d 457, the statute was under consideration by the Court. In none of the cases cited from that jurisdiction, however, was the constitutionality of the statute challenged, and a study of the opinions in all of them leads to the conclusion that its validity was assumed without question, or was, in fact, conceded.

The petitioner cites and relies upon the case of *Althoff* v. *State of Indiana,* 209 Ind. 42, 197 N. E. 895, 896, 102 A. L. R. 1031. In that case, under a State Constitution which provided that in all criminal prosecutions the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed, the Supreme Court of Indiana, one Judge vigorously dissenting, held that the constitutional right of an accused to be tried in the county in which the offense was committed was violated by a statute which permitted the trial court, over the objection of the defendant and without giving him an opportunity to be heard on the subject, to cause jurors to be summoned from an adjoining county when satisfied, after having made a fair investigation in good faith for the purpose, that from any cause it would be improbable that a jury without bias or prejudice could be obtained within the county in which the prosecution was pending. In the majority opinion the Court uses this language:

"It certainly was the clear intent of the framers of our Constitution to guarantee to one accused not only a trial in the county but by a jury of the county where the alleged crime was committed when such a jury would be obtained. Whether or not a statute would be valid which would authorize the court to call a jury from another county when a fair and impartial trial could not be had in the county where the crime was alleged to have been committed, we need not decide. * * *"

Consideration of the case indicates that the statute was condemned because it undertook to empower the trial court to cause jurors to be summoned from another county when, without more, the judge of such court was satisfied, after an investigation made in good faith for the purpose, that it was merely improbable that a fair and impartial jury could be had in the county of the alleged offense. That the majority of the Court was unwilling to uphold the statute for that reason is evident from this language of the opinion:

"The right of an accused to be tried by his neighbors and peers is ancient and sacred, and if there is any exception to the common-law rule, it is only when a fair and impartial jury cannot be obtained in the county and not when it is only improbable that such a jury cannot be obtained."

The authorities cited and discussed earlier in this opinion indicate that the common law rule, not an exception to it, authorized the court to remove the trial from one jurisdiction to another or to summon a jury from another jurisdiction when necessary to obtain a fair and impartial trial. It is also pertinent to observe that, as pointed out in the dissenting opinion in the *Althoff* case, the constitutional provision under consideration in that case did not, in express terms, require the trial of the accused to be by a jury of the county in which the offense was committed.

In Kentucky, under a constitutional provision which declared that the accused shall have a speedy public trial by an impartial jury of the vicinage, a statute which provided that if the judge of the court be satisfied, after having made a fair effort, in good faith for that purpose, that, from any cause, it will be impracticable to obtain a jury free of bias in the county in which the prosecution is pending, he shall be authorized to order the sheriff to summon a sufficient number of qualified jurors from some other county, was held to be valid and constitutional by the Court of Appeals of that State, in the case of *Moseley* v. *Commonwealth*, 27 Ky. L. 214, 84 S. W. 748. The validity of the statute was sustained

by the same Court in the prior cases of *Brown* v. *Commonwealth,* 20 Ky. L. 1552, 49 S. W. 545; *Massie* v. *Commonwealth,* 18 Ky. L. 367, 36 S. W. 550, and *Roberts* ·v. *Commonwealth,* 94 Ky. 499, 22 S. W. 845.

In *State ex rel. Hornbeck* v. *Durflinger,* 73 Ohio State 154, 76 N. E. 291, decided by the Supreme Court of Ohio, the question of the constitutionality of a statute of that State, designated Section 7263, which provided that all criminal cases shall be tried in the county where the offense was committed, unless it appears to the court that a fair trial could not there be had, in which case the court shall direct that the person accused be tried in some other county, was before the court. The statute, which obviously dealt with the subject of change of venue, was comprehensive in terms and, as stated by the Court, did not restrict, expressly or by implication, the right to obtain a change of venue in a criminal case to the defendant, but conferred it equally upon him and the State. Article 1, Section 10 of the Constitution of Ohio guaranteed to the accused a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. In the opinion the Court says:

"If, however, within the meaning of this provision of the Constitution, the right guaranteed to the accused is not an absolute right to be tried in all cases by a jury of the county in which the offense is alleged to have been committed, but is a qualified right, subject to and conditioned upon the possibility that a fair and impartial trial can be had in that county, then and in that event section 7263, although authorizing a change of venue on application of the state, would not for that reason be in conflict with or repugnant to the above provision of section 10 of the Constitution."

· The Court construed the word district in that constitutional provision to include a place or jurisdiction other and distinct from that of the county, and held the statute, to the extent that it authorized a change of the place of trial, on the application of the State, from the county of the offense to an adjoining county, when a fair

and impartial trial can not be had in the first mentioned county, not to be in conflict with the Constitution of that State.

In *Hewitt* v. *State of Florida*, 43 Fla. 194, 30 So. 795, the Supreme Court of Florida upheld the validity of a statute of that State which authorized a change of venue in criminal cases on the application of the State and without the consent of the accused, when an impartial jury could not be secured in the county where the offense was alleged to have been committed. Section 11 of the Declaration of Rights in the Constitution of that State of 1885, provided that in all criminal prosecutions the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed. The first point of the syllabus in that case contains this language:

> "By the common law an accused had the right to be tried in the county in which the offense was alleged to have been committed, where the witnesses were supposed to be accessible, and where he might have the benefit of a good character, if he had established one there; but, if an impartial trial could not be had in such county, it was the practice to change the venue to some other county, where such trial could be obtained. The right of trial in the county where the offense is alleged to have been committed, when an impartial jury can there be had, is secured to the accused by section II, Declaration of Rights (constitution of 1885); but it is not the design of this provision to force a trial in a county where an impartial jury cannot be obtained, as to do so would defeat the greater and more important right of a speedy trial by an impartial jury."

In that case the trial court, upon a finding that a qualified jury could not be obtained in the county in which the proceeding was pending, transferred the trial to another county, and this action was approved by the appellate court.

If the right of the accused, at common law, was an absolute or unconditional right to be tried by a jury of the vicinage, or, in modern usage, the county of the

alleged offense, that right has been modified by the Constitution of this State to the extent that it is subject to the essential requirement that the jury of the county must be a fair and impartial jury. If, however, the right of the accused, at common law, was not an absolute or unconditional right to be tried by a jury of the vicinage or the county of the alleged offense, but was subject to the requirement of a fair and impartial trial, and that, when necessary for that purpose, the trial could be removed, either at the instance of the prosecution or of the accused, to another county, or a qualified jury summoned from another county, which appears to be the correct view and the one supported by the greater number of cases and the textwriters, a statute which gives recognition to this qualified right would be merely declaratory of the common law in that respect. Whichever may have been the true common law rule, a statute which makes provision for a jury from another county for the trial of the accused in the county in which the offense is alleged to have been committed, when necessary to obtain a fair and impartial trial, is not in conflict with the provisions of the Constitution of this State.

Section 20, Article 1, Chapter 52, Code, 1931, reasonably construed and properly applied is not violative of the right of an accused to trial by jury, secured to him by the Constitution of this State. In interpreting and applying the statute, care must be taken to ascertain the intent and the purpose of the Legislature in passing it. *State ex rel. McLaughlin* v. *Morris,* 128 W. Va. 456, 37 S. E. 2d 85. It is obvious that in enacting this legislation the Legislature did not intend to pass an unconstitutional statute or to deprive a defendant of any of the rights secured to him by the Constitution and under the common law to a fair trial by an impartial jury in the county in which the alleged offense was committed, but that it was the legislative purpose and intent to deal with a situation in which it clearly appears that an impartial jury can not be obtained in that county. In such circumstances, the State being

forbidden by the Constitution, and the accused being unwilling, to seek the removal of the trial to another county, the accused, regardless of his guilt or the enormity of his crime, might be able to postpone indefinitely, or prevent entirely, any trial within the county to determine his guilt or innocence. Under such conditions, if an impartial jury could not be summoned from another county to try the accused in the county in which the alleged offense was committed, and a fair trial, required by the Constitution, could not be had, because of the absence of an impartial jury, crime would remain unpunished and the aims of justice would be effectively thwarted. It was to prevent an occurrence of this nature, even though it should rarely happen, that the statute was enacted.

In construing the statute, the validity of which is here assailed, recognition and practical effect must be given to the elementary rule that every reasonable construction must be resorted to in order to save a statute from unconstitutionality. *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture,* 124 W. Va. 81, 20 S. E. 2d 797; *Hooper* v. *California,* 155 U. S. 648, 15 S. Ct. 207, 39 L. ed. 297; *Railway Co.* v. *Conley,* 67 W. Va. 129, 67 S. E. 613; *State* v. *Massie,* 95 W. Va. 233, 120 S. E. 514; *State* v. *England,* 86 W. Va. 508, 103 S. E. 400. And if there is any doubt as to the constitutionality of an act that doubt should always be resolved in favor of its validity. *State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504. To give to the statute a meaning that the trial court could summon a jury from another county, as a mere matter of personal convenience or to satisfy an unestablished belief that a qualified and impartial jury could not be found in the county in which the alleged offense was committed, and when not necessary to a fair and impartial trial, would render the statute unconstitutional as operating to deny an accused the right to a trial by jury secured to him by the Constitution. For this reason no such meaning should be given to the terms of the act unless no other effect can be reasonably attached or imported to them. Properly construed, the

language of the statute empowers the trial court, or the judge thereof in vacation, when it clearly appears that qualified jurors, not exempt from serving, can not be found in the county in which the trial is to be, to cause so many of such jurors as may be necessary to be summoned from any other county, in the manner specified in the statute. This construction, which is now placed upon the statute, is, in all respects, reasonable, saves the statute from unconstitutionality, is consonant with the spirit and the letter of Article III, Section 14, of the Constitution, and gives effect to the intent and the purpose entertained by the Legislature in its enactment.

From the foregoing discussion it is evident that the contention of the petitioner that the statute is repugnant to the requirement of due process of law imposed upon this State by the Fourteenth Amendment to the Federal Constitution must be rejected. Due process of law has been said to be violated by a State when its conduct in enforcing its own notions of fairness in the administration of criminal justice, or in other ways, is offensive to a decent respect for the dignity of man and without regard for his freedom. *Louisiana* v. *Resweber,* 328 U. S. 833, 66 S. Ct. 1382, 91 L. ed. 359. The Supreme Court of the United States, in discussing and applying the due process clause of the Fourteenth Amendment, has, in numerous cases, held action of a State to be violative of that requirement when it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.", *Snyder* v. *Massachusetts,* 291 U. S. 97, 54 S. Ct. 330, 78 L. ed. 674; or "certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard." *Holden* v. *Hardy,* 169 U. S. 366, 18 S. Ct. 383, 42 L. ed. 780; or "immunities implicit in the concept of ordered liberty.", *Palko* v. *Connecticut,* 302 U. S. 319, 58 S. Ct. 149, 82 L. ed. 288; or " fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.", *Hebert* v. *Louisiana,* 272 U. S. 312, 47

S. Ct. 103, 71 L. ed. 270. Conduct which does not infringe the standard depicted by the broad and inexplicit pronouncements quoted from the foregoing cases, is not repugnant to or violative of the requirement of due process.

The Federal Constitution does not prohibit a State from regulating and restricting the right of trial by jury in its own courts as it may deem proper. A trial by jury in a State court is not a privilege or an immunity which a State is forbidden to abridge, *Maxwell v. Dow,* 176 U. S. 581, 20 S. Ct. 448, 44 L. ed. 597; *Hawkins v. Bleakly,* 243 U. S. 210, 37 S. Ct. 255, 61 L. ed. 678. The provision that a person can not be deprived of his property without due process of law does not require that all trials in a State court must be by a jury; and the requirement of due process is satisfied when a trial is had according to the settled course of judicial proceedings as regulated by the law of the State. 35 C. J. 150. Due process of law means in the due course of legal proceedings according to the rules and the forms which have been established for the protection of private rights, *Peerce v. Kitzmiller,* 19 W. Va. 564; it is such procedure as is within the limits of those fundamental principles of liberty and justice which underlie our civil and political institutions. *Floyd v. Chesapeake & Ohio Railway Company,* 112 W. Va. 66, 164 S. E. 28; *Hurtado v. California,* 110 U. S. 516, 4 S. Ct. 111, 28 L. ed. 232. The statute, now under review, as here construed and applied, manifestly does not offend or transgress any requisite of due process of law within the meaning of the Fourteenth Amendment to the Constitution of the United States, or of Article III, Section 10, of the Constitution of this State.

The undisputed facts, disclosed by the record and set forth earlier in this opinion, clearly indicate the absence of any showing that even a reasonable possibility existed that sufficient qualified jurors could not be found in Mineral County to accord the defendant an impartial trial in that county, at the time the jurors were sum-

moned from Tucker County to attend the Circuit Court of Mineral County for the trial. ·

When the order was entered requiring the attendance of jurors from Tucker County, and the jurors from that county were summoned, only ninety-six jurors had been examined and only one hundred and twenty-eight of the five hundred and thirteen persons whose names appeared on the list of those eligible for jury service had been called and examined and there still remained three hundred and eighty-five persons from whom sufficient qualified jurors could reasonably be expected to be obtained. No effort was made to exhaust the list, or to call, if necessary, in the manner provided by law, more jurors from the additional number of at least two thousand persons within the county who were available for jury service. The refusal of the trial court to resort to any of these means, or to make any effort, after examining the ninety-six jurors, to secure additional jurors from Mineral County, before causing jurors to be summoned from an outside county, was not justified by the circumstances which were clearly shown to exist. It ignored the requirement that it must clearly appear that a qualified jury could not be obtained in Mineral County. In fact, it was apparent, at the time, that, if ten or more additional jurors had been called, as requesed by the attorneys for the defendant, which request the court refused, a panel of twenty jurors, qualified to the extent that they were acceptable to the court, could have been obtained promptly and with little, if any, difficulty. The refusal of the trial court to make any further effort to secure a qualified jury in Mineral County constituted an exercise of power in excess of that conferred upon it by the statute.

Under Code, 35-1-1, the writ of prohibition will issue, as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter of the controversy, or, having such jurisdiction, exceeds its legitimate powers. Here the Circuit Court of Mineral County has jurisdiction

of the subject matter and is required, under the Constitution, Article III, Section 14, to try the case, in that county, unless it is removed upon the petition of the accused, and for good cause shown, to some other county, which has not occurred. In the exercise of its jurisdiction, however, the trial court has exceeded its legitimate powers, under Section 20, Article 1, Chapter 52, Code, 1931, in causing jurors to be summoned from another county for the trial of the accused, before it clearly appeared that a qualified jury can not be found in Mineral County, and indeed, in circumstances which indicate that such a jury can be readily secured in that county.

At the present stage of the proceeding in the Circuit Court of Mineral County, the defendant, the petitioner, here, has no remedy, unless it be prohibition, until after a trial has been had and a final judgment upon a conviction has been entered, when, if such should be the result of the trial, the remedy of a writ of error would become available. The law does not require him to submit to that burden or to await the final outcome of the trial before obtaining adequate relief. Though a court has jurisdiction of the subject matter in controversy, when it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question, and there is no adequate or complete remedy in the ordinary course of procedure, the writ of prohibition will lie under the general law and under the statute. See *County Court* v. *Boreman,* 34 W. Va. 362, 12 S. E. 490. In a number of cases in which a trial court had jurisdiction of the subject matter in controversy, but exceeded its legitimate powers, this Court has awarded the writ. *State* v. *Dailey,* 72 W. Va. 520, 79 S. E. 668, 47 L. R. A. (N. S.) 1207; *Central Gas Co.* v. *Holt,* 66 W. Va. 516, 66 S. E. 717; *City of Charleston* v. *Beller,* 45 W. Va. 44, 30 S. E. 152; *Ensign Co.* v. *Carroll,* 30 W. Va. 532, 4 S. E. 782; *McConiha* v. *Guthrie,* 21 W. Va. 134. The writ, by force of the statute, is a writ of right, and the petitioner in this pro-

ceeding has no other present or adequate remedy. His only alternative is to await an adverse judgment in the pending criminal prosecution and then, but not until then, to raise, by writ of error, the issues here presented, after having submitted to the costly and unnecessary experience and delay of proceeding with the trial despite the action of the trial court in exceeding its legitimate powers. He is entitled to the writ of prohibition to prevent that course of action. *White Sulphur Springs* v. *Ripley,* 124 W. Va. 486, 20 S. E. 2d 794.

For the foregoing reasons a writ is awarded to prohibit the respondents from proceeding further with the trial of the defendant by a jury summoned from Tucker County or from any county other than Mineral County, until it clearly appears that a legally qualified jury for his trial can not be obtained in Mineral County.

*Writ awarded.*